MARY ANNE WITKOWSKI, Plaintiff-Appellant, *v.* ST. ANNE'S HOSPI-
TAL OF CHICAGO, INC., Defendant-Appellee.

First District (4th Division)   No. 82—193

Opinion filed March 31, 1983.

Howard M. Rubin, of Chicago, for appellant.

Bernard J. Echlin and Michael W. Duffee, both of Vedder, Price, Kauf-
man & Kammholz, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Mary Anne Witkowski, was employed by the defendant, St. Anne's Hospital of Chicago, until she was discharged from her position as the hospital's chief physical therapist in 1976. Following her discharge, the plaintiff filed her three count complaint in the circuit court of Cook County, alleging that she had been wrongfully discharged from her employment by the defendant and was entitled to relief under both contract and retaliatory discharge causes of action; that the defendant had improperly withheld accumulated vacation pay to which she was entitled and that the defendant intentionally caused her to suffer emotional distress. The circuit court granted the defendant's motion for summary judgment and dismissed all three counts of the plaintiff's complaint. The plaintiff now appeals that dismissal to this court and again raises the same three issues that were presented below, contending that she has raised sufficient genuine issues of material facts to have withstood the defendant's motion for summary judgment on all three counts.

The plaintiff first asks this court to determine whether she was wrongfully discharged from her employment by the defendant. In essence, the plaintiff contends that she was discharged because she became eligible to collect long-term disability benefits from the hospital. In contrast, the defendant argues that the plaintiff was fired because she abandoned her job without giving prior notice to anyone in the hospital administration. The evidence adduced in the motion for summary judgment was that the plaintiff worked at the defendant hospital for approximately 24 years during the time period between 1945 and 1976. At different times, the plaintiff performed as a registered physical therapist, as a registered nurse and as the hospital's chief physical therapist. She held the last position continuously from 1964 until she was fired in 1976. As chief physical therapist, the plaintiff administered physical therapy and supervised other employees in the physical therapy department. At no time during the plaintiff's employment history with the defendant did she enter into a written employment contract.

The events leading up to this lawsuit revolve around an arthritic condition from which the plaintiff began to suffer in 1970. Between 1970 and 1976, the plaintiff was treated for her arthritis by Dr. Theodore Lescher, a member of the staff of the defendant hospital. Early in 1976, the plaintiff's condition apparently became severe. On February 23, 1976, she made arrangements for preadmission into the defendant hospital. On February 24, 1976, the plaintiff performed her job at the hospital until sometime in the afternoon when she was admitted into

the hospital as a patient. Although the plaintiff was familiar with a hospital policy that required hospital employees to notify their superiors in advance before absenting themselves from their jobs, she did not notify either her supervisor or anyone else in the hospital administration prior to the time she left her job and was admitted as a patient.

The plaintiff remained hospitalized for approximately one week while she received treatment for arthritis and underwent an operation to remove ingrown toenails. The day after the plaintiff's admittance into the hospital, she was visited in her hospital room by her supervisor, Sister Leonoris. Leonoris testified that she stated that the plaintiff had exhibited unprofessional conduct by abandoning her job without prior notice and had thereby "terminated herself." Leonoris further questioned the plaintiff regarding the seriousness of her actual physical condition and later called Dr. Lescher into her office to question him regarding the plaintiff's condition. Later that same day, Leonoris testified that she met with Antonio Maienza, the hospital administrator, and that they jointly reached a decision to discharge the plaintiff. However, the plaintiff was not given notice of their alleged decision at this time.

The plaintiff's condition did not improve following her release from the hospital and she remained confined to her home. Dr. Lescher prepared a medical certificate that was submitted to the defendant on approximately March 26, 1976, which stated that the plaintiff continued to suffer pain and would be absent from work indefinitely. Subsequently, Maienza sent a letter to the plaintiff on May 7, 1976, notifying her that her employment had been terminated effective April 24, 1976. The letter gave no reason for the plaintiff's discharge. Upon receiving the letter, the plaintiff telephoned Maienza, and she later testified that he again gave her no explanation for her discharge during the course of the telephone conversation. However, Maienza testified that he told the plaintiff that she was fired because of her "unprofessional behavior" in leaving her patients unattended on the day she was admitted into the hospital. Maienza mailed yet another letter to the plaintiff on May 14, 1976, stating that the plaintiff's "unprofessional behavior" in leaving her job without prior notice and in leaving her patients unattended was the cause of her discharge.

The defendant hospital furnishes a long-term disability plan which provides benefits to hospital employees in the event that they suffer from a total disability. A person is defined as being totally disabled if he is unable to perform all of the duties of his regular job. The plan provides for benefits up to 50% of an employee's monthly salary in the event that he becomes totally disabled. Importantly, once an employee

is discharged from or resigns from his position with the hospital, his eligibility under the long-term disability plan ceases. An employee is allowed 90 days to file a claim after becoming disabled. The plaintiff in the instant case has never filed a claim for long-term disability benefits with the defendant hospital or otherwise pursued any claim procedures under the plan.

The plaintiff has attempted to set forth two different causes of action relating to her alleged wrongful discharge. First, she contends that she has stated a cause of action in contract by alleging that the defendant's actions in discharging her breached an implied covenant of good faith and fair dealing that was present in her at-will employment relationship with the defendant. Second, the plaintiff argues that she has raised a cause of action in tort for retaliatory discharge as a matter of law because the defendant's actions in discharging her contravened an important State "public policy" concern, namely, the protection of employee benefit plans. (See *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.) In addition, the plaintiff contends that she has established sufficient genuine issues of material facts to support her causes of action and that therefore, it was improper for the trial court to enter summary judgment in favor of the defendant.

In response, the defendant argues that the plaintiff has failed to state a cause of action in either contract or tort. Alternately, the defendant contends that even if we recognize the plaintiff's arguments to be viable causes of action, there were no genuine issues of material fact regarding the reasons for the plaintiff's discharge.

Preliminarily, however, the defendant contends that the Federal law expressed in the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. sec. 1001 *et seq.* (1976)) has preempted the plaintiff's wrongful discharge claims and that consequently, her claims may only be brought in the United States District Court. In order to consider the defendant's contention, we must first determine whether in fact the State law is preempted by the Federal law and secondly, even if it is so preempted, whether the State court is preempted by the Federal court.

We believe that the wrongful discharge claims advanced by the plaintiff necessarily fall under the provisions of ERISA. The plaintiff's complaint states in pertinent part:

"9. The Defendant's action, of on or about May 7, 1976 in terminating Plaintiff without any reasonable cause or justification therefore, was done solely to prevent Plaintiff from participating under the LTD [long term disability] plan to which she was

entitled as part of her employment."

The plaintiff's allegation closely tracks the language of section 510 of ERISA which forbids an employer from discharging an employee because of his eligibility to receive benefits under an employee benefit plan:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan *** or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this sub-chapter ***." (29 U.S.C. sec. 1140 (1976).)

Because the actions that the plaintiff complains of here so closely resemble the behavior that is forbidden under section 510 of ERISA, we believe that the plaintiff's cause of action is necessarily subject to analysis under the pertinent provisions of ERISA.

■ The Federal statute provides that an ERISA claim will supersede all State causes of action. (29 U.S.C. sec. 1144(a) (1976).) The plaintiff argues that hers is not an ERISA claim because she has never sued for benefits under ERISA or in any other way advanced an ERISA cause of action. However, we believe that the plaintiff's argument misses the point. Specifically, section 514 of ERISA provides:

> "*** [T]he provisions of this subchapter [which includes section 510] *** shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to this act] ***." (29 U.S.C. sec. 1144(a) (1976).)

Thus, because the plaintiff's claim so closely tracks the language of section 510 of ERISA, she is necessarily bound to pursue her claim under the dictates set out by Congress when it enacted ERISA. The plaintiff may not instead elect to pursue a State tort cause of action or a State contract cause of action where Congress has so specifically provided that Federal law rather than State law is applicable to a claim such as the plaintiff's. Section 514 provides that the "State laws" that are superseded by ERISA include:

> "*** [A]ll laws, decisions, rules, regulations, or other State action having the effect of law, of any State. ***" (29 U.S.C. sec. 1144(c)(1) (1976).)

The plaintiff is therefore precluded from relying upon State law where Congress has chosen to provide that State law, such as the law upon which the plaintiff bases her tort and contract claims, is superseded by the provisions of ERISA.

The plaintiff also argues that her wrongful discharge claims are

only indirectly and peripherally related to ERISA and that therefore, she need not bring her claim under the provisions of ERISA and may instead rely upon State law. We disagree. It is true that certain cases cited to us by the plaintiff conclude that where State law only tangentially touches upon areas with which ERISA is concerned, the State law at issue is not superseded by Federal law. (See, *e.g.*, *Provience v. Valley Clerks Trust Fund* (E.D. Cal. 1981), 509 F. Supp. 388, and cases cited therein.) However, we do not believe the case at bar to be such a case. The plaintiff claims that she was discharged solely because she became eligible to collect long-term disability benefits under the defendant's employee benefit plan. Section 510 of ERISA specifically makes it unlawful for the employer to discharge an employee for the reason cited by the plaintiff. (29 U.S.C. sec. 1140 (1976).) We thus believe that the plaintiff's claim falls squarely and directly into the confines set out in ERISA rather than merely peripherally affecting an area with which ERISA is concerned.

Having established that this is an ERISA cause of action and that therefore, Federal law must apply, we must now determine whether a State court is precluded from considering the merits of the plaintiff's claim because of the preemption clause contained in section 502(e)(1) of ERISA. (29 U.S.C. sec. 1132(e)(1) (1976).) Specifically, there are two subsections of section 502 which conceivably empower the plaintiff to bring her section 510 wrongful discharge claim. If the plaintiff's claim falls under subsection (a)(1)(B), State courts have concurrent jurisdiction under subsection (e)(1) to consider the claim. However, if the plaintiff's claim falls under subsection (a)(3), the Federal courts are granted exclusive jurisdiction over the case under subsection (e)(1). These pertinent subsections of section 502 provide:

"(a) A civil action may be brought—
(1) by a participant or beneficiary—
* * *

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
* * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
* * *

(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

As we determined earlier, we are bound to follow Federal law in interpreting the statute. The Federal courts have concluded that subsection (a)(3) governs suits brought under section 510. (*Kross v. Western Electric Co.* (N.D. Ill. 1982), 534 F. Supp. 251; *McGinnis v. Joyce* (N.D. Ill. 1981), 507 F. Supp. 654; *Bittner v. Sadoff & Rudoy Industries* (E.D. Wis. 1980), 490 F. Supp. 534.) Therefore, because section 502(e)(1) gives the Federal courts exclusive jurisdiction of all claims falling under section 502(a)(3), we find that this court is preempted from considering the merits of the plaintiff's wrongful discharge arguments.

As a final note, even if this court concluded for some reason that the plaintiff's claim fell under subsection (a)(1)(B) and that therefore this court would have concurrent jurisdiction to consider her claim under subsection (e)(1), we would still be precluded from considering the merits of the plaintiff's arguments. Specifically, in order for the plaintiff to pursue an action in court under subsection (a)(1)(B), she must first have exhausted the claim procedures that are provided under the benefit plan at issue. (*Kross v. Western Electric Co.* (N.D. Ill. 1982), 534 F. Supp. 251.) In the instant case, the plaintiff has not even begun to pursue the claim procedures under the long-term disability plan, and therefore, this court would be barred from considering her section 510 claim even if we possessed concurrent jurisdiction to reach the merits.

The second issue raised by the plaintiff on appeal concerns whether she stated sufficient genuine issues of material facts to withstand the defendant's motion for summary judgment on her claim to recover pay for accumulated vacation time. Specifically, the plaintiff argues that she had accumulated 50 vacation days at the time of her discharge but received pay from the defendant for only 30 of those days.

The only written policy of the hospital concerning accumulated vacation time is contained in the hospital's employee handbook. The handbook provides that an employee may accumulate up to 30 days of vacation time. Richard Dalton, the personnel manager at the defendant hospital, testified that there was an informal but unofficial practice at the hospital to allow department heads such as the plaintiff to accumulate in excess of 30 vacation days. However, no employee has ever been paid for more than 30 vacation days upon either a voluntary or involun-

tary termination from employment.

■ We believe that the trial court properly granted summary judgment on this count because we find that there was no genuine issue as to any material fact. It is undisputed that the employee handbook allows accumulation of only 30 vacation days and that no employee has ever received pay for more than those 30 days upon termination. It does not follow that merely because certain employees may accumulate extra vacation time, it must also be presumed that they are entitled to be paid for the extra accumulated time in the event that they are discharged. Any right of the plaintiff to be paid for accumulated vacation time was properly governed by the provisions of the employee handbook and the pre-existing employment policy of the hospital not to pay for accumulated vacation time in excess of 30 days. Therefore, we do not believe that the trial court erred in entering summary judgment on this count.

The final issue advanced by the plaintiff on appeal is whether the trial court improperly entered summary judgment in favor of the defendant on the plaintiff's claim for intentional infliction of emotional distress. In essence, the plaintiff claims that the alleged action of the defendant in wrongfully discharging her in order to prevent her from securing long-term disability benefits was so outrageous as to constitute a cause of action in tort capable of withstanding the defendant's motion for summary judgment.

In order to determine whether the plaintiff has stated a cause of action for intentional infliction of emotional distress, we must accept as true the allegations contained in the plaintiff's complaint. Specifically, the plaintiff argues that she was discharged from her position at the hospital solely because she became eligible to collect long-term disability benefits; that without justification, the defendant stated to the plaintiff, a long-term employee of the hospital who had never before been subject to any disciplinary action, that she was fired because she had acted in an unprofessional manner and had abandoned her position and patients; that the defendant's actions aggravated the plaintiff's pre-existing ulcer condition, caused her to suffer insomnia and made it necessary for her to take medication; and that the defendant could have foreseen that the plaintiff would suffer emotional distress because it had possession of the plaintiff's medical records and therefore knew that the plaintiff's disability was of a serious nature. The plaintiff further states that as the result of her wrongful discharge, she has had to accept support from her family and dissipate her life's savings in order to survive.

In *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d

765, the Illinois Supreme Court determined that a defendant will be liable for intentional infliction of emotional distress " '*** only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' " (66 Ill. 2d 85, 90, 360 N.E.2d 765, 767; see also *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) The court further observed that "infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it ***.' " *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767.

In *Public Finance* the plaintiff alleged, among other things, that a finance company's employees called the plaintiff and visited her home several times weekly over a seven month period, called the plaintiff at her daughter's hospital bed despite the fact that they knew the daughter's condition was severe and that the plaintiff herself was sick and nervous, induced the plaintiff to write a check and promised that the check would not be processed, and telephoned an acquaintance of the plaintiff and informed her that the plaintiff was writing bad checks. However, the supreme court found that this conduct was not of such an extreme and outrageous nature as to constitute a basis for recovery under the theory of intentional infliction of emotional distress.

Following *Public Finance*, the courts have adhered to the supreme court's admonition that only "extreme and outrageous" conduct will suffice to support a cause of action for intentional infliction of emotional distress. For example, in *Kelly v. Franco* (1979), 72 Ill. App. 3d 642, 391 N.E.2d 54, the plaintiffs alleged that their neighbors, the defendants, threatened them in order to force them to move from their home, complained about their son to the police regarding trivial matters, made threatening phone calls and consequently jeopardized the job of one of the plaintiffs. The court found that the plaintiff had not stated a cause of action for intentional infliction of emotional distress and observed, "[These] are actions without any social utility which certainly would have been irritating to the strongest of psyches. However, these actions do not go beyond mere indignities, threats, or trivialities and do not constitute the outrageous conduct that no reasonable man could be expected to endure." 72 Ill. App. 3d 642, 648-49, 391 N.E.2d 54, 59; see also *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 431 N.E.2d 1175; *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591; *Debolt v. Mutual of Omaha* (1978), 56 Ill.

App. 3d 111, 371 N.E.2d 373.

Under the reasoning of *Public Finance* and the cases that followed, we do not believe that the plaintiff's allegations in this case regarding the defendant's actions demonstrate conduct that is so outrageous, so atrocious and so utterly intolerable that a reasonable person could not be expected to endure it. If the defendant actually behaved as the plaintiff contends, we cannot condone such conduct; yet neither can we state that the defendant's actions rose to the level of outrageousness and severity necessary to set forth a cause of action for intentional infliction of emotional distress.

The plaintiff refers this court to *Robertson v. Travelers Insurance Co.* (1981), 100 Ill. App. 3d 845, 427 N.E.2d 302, where an employee was found to have stated a cause of action for intentional infliction of emotional distress where the employer's insurance company induced the employee to rely upon the insurer's assurances of fair treatment until the statute of limitations had run on the employee's worker's compensation claim. Once the statute of limitations had run, the insurer notified the employee that it would not honor the employee's claim. The employee, who was recovering from surgery and could not work, was forced to borrow from relatives, go on public aid and accept charity. He further became "highly nervous and forgetful" as the result of his financial condition.

We agree that *Robertson* poses facts very similar to those presented in the instant case. However, we do not agree that the conduct complained of in *Robertson* was so outrageous as to meet the standard for intentional infliction of emotional distress set out by the supreme court in *Public Finance*. Rather, we think this cause of action is reserved for especially abusive and atrocious transgressions, and we will not expand upon the supreme court's definition to cover such allegations as the instant plaintiff's, as heartless and callous as those allegations may first appear. Because we are not bound to follow the reasoning of *Robertson*, we decline to do so here. We therefore find that the trial court properly granted summary judgment on this count of the plaintiff's complaint.

For the foregoing reasons, we affirm the trial court's entry of summary judgment on all three counts of the plaintiff's complaint.

Affirmed.

JOHNSON and LINN, JJ., concur.