SYLVIA S. HARRIS, Plaintiff-Appellant, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 84—437

Opinion filed December 27, 1984.

Cohon, Raizes & Regal, of Chicago (Gerald D. Chiss, of counsel), for appellant.

David I. Herbst and Martha L. Ashenhurst, both of Portes, Sharp, Herbst & Kravets, Ltd., of Chicago, for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff Sylvia Harris (Harris) appeals from the order of the circuit court of Cook County which, pursuant to the motion of defendant First Federal Savings & Loan Association of Chicago (First Federal), dismissed count I of Harris' complaint, which alleged that First Federal's actions toward her while she was employed by First Federal amounted to the intentional infliction of emotional distress. The trial

court dismissed the count for failure to state a claim. The sole issue presented for our review is the propriety of the trial court's judgment.

We affirm.

The following facts are alleged in count I of Harris' complaint and stand admitted by First Federal for purposes of its motion to dismiss. Since August 1, 1977, Harris was employed by First Federal as a financial counselor. She received numerous salary increases from time to time while so employed, and was promoted to the position of senior financial counselor in roughly September 1980. On February 11, 1981, Harris was promoted to the position of manager of First Federal's Skokie branch.

In January 1982, while employed as branch manager, Harris determined that one of the employees whom she supervised may have been involved in the commission of the crimes of theft and embezzlement of the funds held on account at First Federal. After conducting a factual investigation, Harris notified her supervisors and a further investigation commenced. The employee who was the object of the investigation was temporarily suspended, but was later returned to active employment. First Federal undertook no punitive or disciplinary action against the employee.

On or about March 23, 1982, Harris received a memorandum from one of her supervisors which accused her of "questionable judgment" in connection with her handling of the employee investigation. Roughly a week later, Harris was placed on six months' probation, transferred to First Federal's Mount Prospect branch, and instructed to work in the position of financial service representative, a position inferior to that of branch manager. These actions were allegedly in deviation from First Federal's "Guidelines for Employee Discipline," a copy of which was attached to Harris' complaint.

Harris was subjected to various forms of "embarrassing" or "humiliating" experiences while at the Mount Prospect branch. In fact, her complaint specified almost 25 separate manners or instances where she was mistreated, embarrassed, or humiliated by First Federal while at the Mount Prospect branch office. For example, she alleged that when she was transferred to Mount Prospect, she was given a desk directly in front of the assistant manager's office, which was physically removed from the area in which other counselors' desks were located. She also stated that she was given performance reviews more frequently than the other employees, and that at these reviews she was continually berated and criticized, and that her work was criticized "unnecessarily, inaccurately, unfairly and unreasonably."

Her complaint also alleged that on or about September 7, 1982, she was told that she would be transferred to First Federal's Waukegan office, located approximately 30 miles from Harris' home. She was told that if she refused the transfer she would be demoted to a financial service representative. She declined the transfer and was demoted. At another point in time, Harris was instructed to work part-time at First Federal's Palatine and Arlington Heights offices, despite the fact that several of her co-workers lived nearer to these offices and volunteered to work there in Harris' stead. Finally, Harris specified numerous instances where her co-workers were instructed to "mistreat" or "malign" her, by doing such things as not engaging in conversation with her and not answering her business questions. Her colleagues were also instructed to monitor and report on her behavior while at work and would do so by following her into the ladies' room, the lunch area and the parking lot whenever she visited those areas, and by criticizing her for being absent from her desk although she was entitled to visit those areas on coffee breaks and during lunch hour. In addition, Harris was given inconsistent and contradictory job instructions, e.g., she was criticized for going to lunch at her regular lunch period while customers waited in the reception area and also criticized if she waited on customers and missed her regular lunch period.

On approximately April 18, 1983, Harris was again placed on probationary status; roughly a month later, her employment was terminated. Harris claimed that both of these actions were taken by First Federal in manners not permitted by the company's "Guidelines for Employee Discipline." She further alleged that she sought medical treatment for the physical illnesses she suffered because of the intentional emotional distress First Federal caused her.

Harris instituted this action against First Federal on September 9, 1983, in a two-count complaint. Count I sought recovery based upon intentional infliction of emotional distress, count II based upon retaliatory discharge. The trial court dismissed count I of her complaint for failure to state a claim on January 13, 1984. The court also found that there was no just reason to delay enforcement of or appeal from its dismissal of count I of the complaint. Harris' notice of appeal was timely filed.

Harris argues that the facts pleaded in count I of her complaint were sufficient to state a claim for intentional infliction of emotional distress. We disagree.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts which establish that: (1) the conduct

of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant's conduct was such that the defendant knew that severe emotional distress would be certain or substantially certain to result. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765.) The defendant's "extreme and outrageous" conduct must extend beyond "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." (66 Ill. 2d 85, 89-90, 360 N.E.2d 765.) In fact, even tortious or malicious intent may be insufficient, as liability will be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***." (Restatement (Second) of Torts, sec. 46, comment d (1965), quoted in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765.) In addition, the distress suffered must be such that no reasonable person could be expected to endure it. *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765.

■ The conduct of First Federal of which Harris complains was insufficient on which to base a claim for intentional infliction of emotional distress. Although we do not mean to imply approbation of the behavior of First Federal, nevertheless its treatment of Harris was not so reprehensible that it rose to the level of outrageous conduct beyond all possible bounds of decency, nor can we say that a reasonable person would have found First Federal's actions impossible to endure. As the court stated recently in *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 166, 466 N.E.2d 1137:

> "Personality conflicts, questioning of job performance and job transfers, whether for disciplinary or management purposes, are unavoidable aspects of employment. Frequently, they produce concern and distress for the affected employee. Yet, if the distress from such incidents was deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress."

Harris seeks to overcome the result reached below by analogizing the facts here to other Illinois decisions, placing primary reliance upon the recent decision of *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829. In *Milton,* the court held that the plaintiff's complaint stated a claim for intentional infliction of emotional distress where it alleged in substance that his employer retaliated against him through harassment and coercion because the plaintiff refused to engage in the illegal activity of falsifying work reports. Harris argues that her experiences with First Federal were

substantially similar because she was performing a legal obligation to report criminal activity by causing an investigation to be instituted into the activities of one employee which she reasonably and in good faith believed to be illegal, and that First Federal retaliated against her with harassment and coercion. We believe, however, that the facts here are not substantially analogous to those of *Milton*. There is no allegation, as there was in *Milton*, that First Federal's "coercion" of Harris was calculated to cause her to engage in criminal or illegal activity; it is this "coercion [which] appears to form the main rationale behind the *Milton* holding." (*Balark v. Ethicon, Inc.* (N.D. Ill. 1983), 575 F. Supp. 1227, 1232.) Instead, Harris alleges merely that her employer became displeased over the judgment she exercised regarding the conduct of one employee (however erroneous this displeasure may have been), and that thereafter her employer acted toward her in a manner which she found humiliating, embarrassing, and anxiety-producing. Although First Federal's conduct may not be laudable, it was not as reprehensible as that of an employer who coerces its employee in an attempt to force the employee to engage in criminal activity.

Lastly, Harris contends that public policy calls for reinstatement of her claim. Specifically, she argues that recent Illinois decisions recognize that it is against public policy to allow an employer to take punitive or disciplinary measures against an employee who calls to the employer's attention potential violations of criminal laws by fellow employees, citing *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588, and *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829. In our view, however, these cases do not stand for the broad proposition advanced by Harris nor do they imply the conclusion that every employer who under any and all facts and conditions institutes disciplinary measures against an employee who has brought to the attention of his supervisors the possibility that other employees may have engaged in criminal activity has *ipso facto* committed an act of intentional infliction of emotional distress upon the accusing employee. Further, we note that apparently *Milton* relied upon *Palmateer*, not as an expression of public policy, but in order to support its conclusion that where an employer retaliates against an employee with coercion and harassment because of the employee's refusal to engage in illegal or criminal activity, both intentional infliction of emotional distress and retaliatory discharge may be appropriate bases upon which the employee may rely to recover damages from the employer. *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 80-81, 427 N.E.2d 829.) As

previously indicated, we do not disagree with *Milton's* result or its rationale, but conclude, consonant with *Milton's* reasoning, that the facts here are clearly distinguishable from those of *Milton* and consequently are insufficient to state a claim for intentional infliction of emotional distress.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.