DORA GIBSON, Plaintiff-Appellee, v. CHEMICAL CARD SERVICES
CORPORATION, Defendant-Appellant.

First District (1st Division)    No. 86—2801

Opinion filed June 8, 1987.—Rehearing denied June 24, 1987.

Eugene Lieberman, of Wilmette, for appellant.

Murphy, Smith & Polk, of Chicago (Charles E. Murphy, Michael W. Duffee, and Philip A. Miscimarra, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Dora Gibson, filed a complaint in the circuit court of Cook County against her former employer, Chemical Card Services Corporation (Chemical). Plaintiff sought to recover money damages for the intentional infliction of severe emotional distress which she alleged occurred during a criminal investigation in which the plaintiff was suspected of stealing credit cards from Chemical. Chemical moved for summary judgment pursuant to section 2–1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–1005). In support of its motion, Chemical filed the affidavit of its company investigator, and in opposition to the defendant's motion, the plaintiff filed her own affidavit. Following a hearing, the trial court granted the motion and entered summary judgment for the defendant. Plaintiff appealed. We affirm.

■ In reviewing an order granting summary judgment, this court must determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); see *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, cert. denied (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Rivera v. Mahogony Corp.* (1986), 145 Ill. App. 3d 213, 494 N.E.2d 660.) If this court finds that a genuine issue concerning any material fact exists, then the order granting summary judgment must be reversed. (*Continental Illinois National Bank & Trust Co. v. Hyder* (1986), 150 Ill. App. 3d 911, 502 N.E.2d 431.) However, while the plaintiff need not prove her case at the summary judgment stage, she must, nevertheless, present some facts to support the elements of her claim. *Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N.E.2d 599.

The plaintiff here alleged in her complaint that the defendant, through its agents, had engaged in the following conduct which she claimed was extreme, excessive and outrageous. The plaintiff asserted that the defendant accused her of being involved in the theft of company credit cards and demanded that she confess; told her that the stolen cards had been used at her husband's place of employment; claimed that her husband was also involved in the thefts; said that three witnesses had seen her selling credit cards on the street; threatened to send her to jail for 15 years, during which time she would not see her family; and, finally, terminated her employment. The plaintiff alleged that this conduct of the defendant caused her to suffer severe mental anguish, humiliation, and extreme emotional distress.

As stated above, in response to the plaintiff's complaint, the defendant filed a motion for summary judgment which was supported by the affidavit of one of its special investigators, Robert Jasinski. According to Jasinski's affidavit, Chemical is in the retail revolving credit business, and its operations include the evaluation of credit card applications, the production and issuance of credit cards, and the administration of accounts for both cardholders and merchants.

Jasinski, in his affidavit, indicated that his duties included the investigation of any suspected theft of credit cards, and that, in July of 1985, he had discovered that numerous credit cards had been disappearing from the department in which the plaintiff worked. Jasinski's affidavit said that he referred the matter to the United States Secret Service in August of 1985 and that the Secret Service began to conduct interviews with the employees of plaintiff's depart-

ment. The Secret Service interviewed the plaintiff, Jasinski's affidavit related, on August 12 and again on September 16, 1985.

Further, according to Jasinski's affidavit, Jasinski was the only Chemical representative present during the interviews conducted by the Secret Service. Also, Jasinski stated that, during the interviews, the Secret Service agent conducting the interviews would identify himself as such at the beginning of each interview. Jasinski stated that he was present during the two interviews with the plaintiff and that he did ask some questions during the plaintiff's interviews, but that he also left the room at various times during each interview.

In opposition to Chemical's motion for summary judgment, the plaintiff, Dora Gibson, filed her own affidavit which described the events of the September 16 interview. Gibson stated that the interview was conducted by Jasinski and another man who claimed to be a Federal officer and who identified himself as Rick Norton. Gibson stated that Norton informed her that three people had seen her selling the missing charge cards on the street for $100. When Norton made these statements, Gibson said Jasinski stared at her and shook his head in agreement with Norton's accusations. According to Gibson, Norton left the room, and Jasinski then said that she should tell them about her involvement in the thefts. Gibson said that Jasinski told her, at that time, to make it easy on herself since there was no time to play games. Thereafter, Norton returned, Gibson stated, and then informed the plaintiff that several false credit charges had taken place at her husband's place of employment, and then Norton asked Gibson, according to Gibson's affidavit, if her husband had put her up to it. Gibson stated that Jasinski, subsequently, made her sign certain names that appeared on the stolen cards and that Norton claimed that Gibson's handwriting matched that on the stolen cards and Jasinski nodded in agreement. At that point, Norton shouted at the plaintiff that she was going to go to jail for 15 years during which time she would not see her family. Again, Jasinski nodded in agreement. Thereafter, Norton left the room again, and Jasinski told Gibson that she should not make Norton angry because Norton had a bad temper and could let Gibson "have it."

Gibson further stated in her affidavit that she was shocked, terrified, and thought she would die of fright during the September 16 interview. She said that the defendant's conduct made her sick and caused her to suffer physical, mental and emotional pain.

Additionally, Gibson, in her affidavit, said that Jasinski informed her at the conclusion of the second interview not to come to work

on the following day. Attached to Gibson's affidavit was a copy of a letter which she had received from Chemical. The letter stated that Gibson had been suspended without pay until further notice because she had been implicated in the disappearance of credit cards.

The plaintiff contends in this appeal that the facts pleaded in her complaint, and those set forth in her affidavit, demonstrate that the defendant's overbearing attempt, through its agent, to coerce the plaintiff to confess her involvement in the thefts was so outrageous in character and so extreme in degree that it transcended all possible bounds of decency. She argues that the defendant's conduct was especially extreme and outrageous here because of their employer/employee relationship and because the accusations also involved the plaintiff's husband and his job. Thus, these factual allegations were sufficient, the plaintiff contends, to support a cause of action for intentional infliction of emotional distress. Accordingly, she argues that it was improper for the trial court to render summary judgment for the defendant.

The plaintiff further claims that the trial court should not have granted summary judgment since a question of fact existed as to what Jasinski meant when he told the plaintiff during the interview on September 16, 1985, that the Secret Service agent could let her "have it," and if in fact it was a threat, it could also support her claim of emotional distress. Additionally, whether the facts she alleged stated a cause of action was a question of fact, thus, at the very least, the plaintiff asserts, she should have been permitted to present her claim to a jury.

The defendant, on the other hand, argues that the trial court properly entered summary judgment in its favor since the plaintiff's factual allegations, even when taken in the light most favorable to the plaintiff, are insufficient, as a matter of law, to state a cause of action for intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress was first recognized in Illinois in the case of *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. The plaintiff in *Knierim* alleged that the defendant intentionally caused her to suffer severe emotional disturbances and nervous exhaustion by threatening to kill her husband and then by making good on that threat. Our supreme court held that the plaintiff's allegations stated a cause of action. (22 Ill. 2d 73, 87, 174 N.E.2d 157, 165.) In rejecting the argument that this new cause of action would give rise to fictitious claims, the court observed that not every claim would be actionable, stating:

"It has not been suggested that every emotional upset should

constitute the basis of an action. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen rather than pamper it. But a line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." 22 Ill. 2d 73, 85, 174 N.E.2d 157, 164.

Then, in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, the supreme court specifically explained in detail the type of conduct that would support a claim for intentional infliction of emotional distress:

"First, the conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. '*** Liability [is] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' Restatement (Second) of Torts, sec. 46, comment d (1965).

Second, infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. ***

Third, reckless conduct which will support a cause of action under the rules stated is conduct from which the actor knows severe emotional distress is certain or substantially certain to result. [Citation.] Liability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it. [Citation.]

Fourth, *** the extreme and outrageous character of the conduct may arise from an abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests." 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.

In *Public Finance*, a debtor had filed a counterclaim against a collection agency for intentional infliction of severe emotional distress. There, the agency's collectors allegedly came to the debtor's home numerous times per week and, during one visit, refused to leave. Additionally, collectors frequently telephoned the debtor numerous times per day and even telephoned her at a hospital when

the debtor was visiting her daughter who was a patient at the time. Finally, collectors induced the debtor to write a bad check by promising her that they would not attempt to cash it and then told one of the debtor's friends that she was writing bad checks. The circuit court dismissed the counterclaim for failure to state a cause of action, and the supreme court affirmed. The supreme court found that the debt collectors' activity there was not sufficiently extreme or outrageous to state a basis for recovery.

■■ We, therefore, must agree with the defendant here that the plaintiff has also failed to present facts here which would support a claim for intentional infliction of emotional distress. The plaintiff places great emphasis on the employer/employee relationship that once existed between her and the defendant. However, while a relationship of this character might aggravate the nature of conduct so that it can be considered to be extreme and outrageous, and, therefore, actionable, such is not always the case.

In *National Loss Control Service Corp. v. Dotti* (1984), 126 Ill. App. 3d 804, 467 N.E.2d 937, the appellate court affirmed the trial court's entry of summary judgment for an employer on its employee's claim for intentional infliction of emotional distress. The employee had alleged that he had suffered as a result of his employer's extreme and outrageous conduct which included, *inter alia*, a two-hour interview during which the employer accused him of stealing computer tapes, the employer's efforts to slander his reputation with a subsequent employer, and the employer's efforts in preventing the publication of his scientific paper. The appellate court stated that it was not persuaded that the employer's conduct was so outrageous or so extreme in degree as to go beyond all possible bounds of decency, as required by the *Public Finance* case. 126 Ill. App. 3d 804, 811, 467 N.E.2d 937, 942.

The plaintiff, in *Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 447 N.E.2d 1016, an employee of the defendant for approximately 24 years, sued her employer for intentional infliction of severe emotional distress. In her complaint, the plaintiff, who suffered from arthritis, alleged she had been wrongfully discharged to prevent her from securing long-term disability benefits and, that when she was hospitalized at defendant's hospital, her supervisor visited her and accused her "of unprofessional conduct by abandoning her job without prior notice" and stated that she thereby "terminated herself." (113 Ill. App. 3d 745, 747, 447 N.E.2d 1016, 1018.) Also, while the plaintiff was still recovering at home from her arthritic condition, the hospital adminis-

trator notified the plaintiff that she had been terminated and accused her of "unprofessional behavior" by leaving her job without prior notice and in leaving her patients unattended.

Notwithstanding these allegations, this court, after reviewing the requirements of an intentional infliction of emotional distress cause of action, as set forth in *Public Finance*, upheld the trial court's entry of summary judgment against the plaintiff employee stating:

> "[W]e do not believe that the plaintiff's allegations in this case regarding the defendant's actions demonstrate conduct that is so outrageous, so atrocious and so utterly intolerable that a reasonable person could not be expected to endure it. If the defendant actually behaved as the plaintiff contends, we cannot condone such conduct; yet neither can we state that the defendant's actions rose to the level of outrageousness and severity necessary to set forth a cause of action for intentional infliction of emotional distress." 113 Ill. App. 3d 745, 754, 447 N.E.2d 1016, 1022.

Also, in *Balark v. Ethicon, Inc.* (N.D. Ill. 1983), 575 F. Supp. 1227, a Federal case applying Illinois law, the plaintiff asserted that his emotional distress claims arose because the defendant had refused to reinstate him to his job despite an arbitration award in his favor; because defendant employer sent him a derogatory letter stating that the reasons for plaintiff's discharge were for creating a disturbance in the work place and making false and malicious criminal accusations against his supervisor; and finally, because the defendant employer also had referred the plaintiff's name to the FBI in its investigation of the "Tylenol murders." The court stated that the defendant's denial of reinstatement was hardly extreme and outrageous conduct and that the defendant's letter articulating the reason for the plaintiff's discharge also could not be construed as extreme and outrageous conduct. In relation to plaintiff's assertion that defendant referred the plaintiff's name to the FBI concerning the Tylenol murders, the court said:

> "While such behavior on the part of defendant may indicate a lack of judgment and personal respect and would reasonably tend to upset any named suspect such as plaintiff, given the severity of the crimes and the difficulty inherent in solving them, such conduct is far from extreme or outrageous and is not reasonably likely to trigger severe emotional distress on the part of the plaintiff. In this regard, plaintiff also fails to state an emotional distress claim." 575 F. Supp. 1227, 1231.

On the other hand, we find the cases cited by the plaintiff in

support of her position distinguishable from the present case. In *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829, the plaintiff filed suit against his employer alleging intentional infliction of emotional distress. The circuit court dismissed his claim for failure to state a cause of action, but the appellate court reversed. There, the defendant allegedly demanded that the plaintiff engage in criminal activity by falsifying work reports and then retaliated against the plaintiff when he refused. The court noted that the alleged abuse of power by a large corporation over one of its employees could aggravate the outrageousness of the conduct. The court further stated that, unlike the defendant in *Public Finance*, who had merely exercised a legal right which could not be exercised without causing some distress, the employer in *Milton* had no right to have its employees engage in criminal activity or any right to retaliate against those employees who refused to do so. The *Milton* case was distinguished on this very ground in *Balark v. Ethicon, Inc.* (N.D. Ill. 1983), 575 F. Supp. 1227, 1232, and *Harris v. First Federal Savings & Loan Association* (1984), 129 Ill. App. 3d 978, 982, 473 N.E.2d 457, 460.

Thus, here, unlike the employer in *Milton*, Chemical had a legitimate interest in solving prior employee thefts and preventing future thefts. Additionally, Chemical had a legitimate right to assist the Secret Service in its investigation of such thefts. Certainly, such investigations cannot be conducted without creating some distress, and the mere fact of Chemical's apparent or actual authority over the plaintiff to order her to cooperate with the investigation because of the employer/employee relationship does not, under these circumstances, establish extreme or outrageous conduct by Chemical. See *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 747, 431 N.E.2d 1175, 1180.

■ Thus, we find the conduct of Chemical's investigator here, in assisting a Secret Service agent's interview of the plaintiff-employee suspected of theft, was not so outrageous in character or extreme in degree that it transcended all traditional bounds of decency. The company's investigator was not the major participant in the interview; he merely asked some questions and made infrequent comments, and in fact he was not present during the entire interview. Also, most of the statements the plaintiff complains of were not made by the company investigator, but by the Secret Service agent. The employer here merely did what it had a right and a duty to do concerning the theft of its credit cards. While the defendant vigorously participated in and assisted the Secret Service in its investiga-

tion, it could hardly be said that its conduct was beyond what might be expected in such circumstances, let alone outrageous conduct. See *Balark v. Ethicon, Inc.* (N.D. Ill. 1983), 575 F. Supp. 1227.

We also find *Geist v. Martin* (7th Cir. 1982), 675 F.2d 859, and *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154, cited by the defendant, to be inapposite. In *Geist*, the defendant insurance company, according to the plaintiff's complaint, terminated her husband as a general agent of the company in retaliation for her exercise of certain loan privileges under her insurance policy. The court there also found these allegations distinguishable from *Public Finance* since the defendant insurance company acted solely to punish plaintiff for the exercise of her rights under the insurance contract and held that the insurer had no right to undertake the punitive action of firing plaintiff's husband. The fact that the defendant had no right to punish the plaintiff for exercising her rights, the court said, rendered the defendant's conduct extreme and outrageous.

■ In the *Sherman* case, the court found that the defendant's actions involved not only persistent efforts to collect a debt that plaintiff owed, but also that the defendant employed frequent obscene language, threats of public embarrassment, threats of imprisonment, threats to garnish wages, and a contact with plaintiff's minor daughter. In the present case there was no effort to punish the plaintiff for exercising her rights under a contract, nor was there a multitude of recurring contacts involving the use of obscene and abusive language or threats against the plaintiff.

■ Finally, the plaintiff appears to suggest that the defendant's conduct was outrageous because Jasinski, the company investigator, had said to plaintiff that the Secret Service agent could let her "have it" and that she should "take it easy." The plaintiff implies that this was or could have been an illegal act under section 12—7 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—7), as a threat to inflict harm upon her if she did not confess. First, it does not appear anywhere in the pleadings, nor is it suggested that either the company investigator or the Secret Service agent in fact threatened or inflicted any physical harm. Secondly, under *Public Finance*, even if the defendant had acted with a tortious or criminal intent, this is not enough to constitute outrageous conduct. *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767.

■ Here, the plaintiff has merely asserted that the single interview caused her to think she would "die of fright," that she suf-

fered some unspecified "physical and mental and emotional pain," and that she "experienced terror as to defy description." These are at best subjective characterizations of her personal reaction to the interview. However, the determination whether the words or conduct complained of are sufficient to constitute "outrageous conduct" and, thus, be actionable, is based on an objective and not a subjective standard. (*Morrison v. Sandell* (1983), 112 Ill. App. 3d 1057, 446 N.E.2d 290.) Additionally, the plaintiff's efforts to assert that these actions were, nevertheless, actionable because they involved her employer do not assist her in establishing her claim. As this court stated in *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591:

"[T]he existence of [a] relationship [by which one party has 'actual or apparent authority to adversely affect the plaintiff's interests'] does not relieve plaintiff of the burden of proving the extreme and outrageous nature of defendant's conduct. (Restatement (Second) of Torts sec. 46, comment e (1965).) Conduct which otherwise amounts to no more than insults or indignities will not be deemed to be extreme and outrageous simply by virtue of some special relationship which exists between the parties." 73 Ill. App. 3d 851, 856, 392 N.E.2d 591, 596.

Here, we do not find the conduct the plaintiff complains of to be sufficiently extreme and outrageous as required by the standards set forth in *Public Finance* to state a cause of action for intentional infliction of emotional distress.

Accordingly, based on the facts presented by the record herein, we find the circuit court properly entered summary judgment in favor of Chemical. Thus, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and O'CONNOR, JJ., concur.