J. W. RICHARD OWENS, Plaintiff-Appellee, v. SECOND BAPTIST CHURCH OF LA GRANGE *et al.*, Defendants-Appellants.

First District (4th Division)   No. 86—3067

Opinion filed November 12, 1987.—Rehearing denied December 21, 1987.

Eugene Lieberman, of Wilmette (Leo Wiggins, of counsel), for appellants.

Stanley L. Hill & Associates, P.C., of Chicago (Stanley L. Hill and Lawrence E. Sommers, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, the Reverend J. W. Richard Owens, brought an action in the circuit court of Cook County against defendants, the Second Baptist Church of La Grange and three of its officers. Plaintiff alleged breach of his employment contract and intentional infliction of emotional distress. Defendants counterclaimed, seeking to evict plaintiff from the parsonage and damages.

The cause was tried to a jury, which returned verdicts in favor of plaintiff on both his claims and defendants' counterclaim and awarded plaintiff damages of $40,000. Defendants appeal, contending that the trial court erred in denying their motion for a directed verdict.

We reverse the judgment of the trial court and remand with directions.

BACKGROUND

The record shows that the parties originally had filed the complaint and counterclaim separately in the trial court. Upon subsequent stipulation by the parties, however, the trial court consolidated the actions for one joint trial, each action receiving a separate verdict and judgment.

In his second amended complaint, plaintiff named as defendants the church and Willie D. Hayes, chairman of the church's deacon's board; James K. Gilbert, chairman of the trustee's board and the church's financial secretary; and Arthur Hampton, church treasurer. In count I, plaintiff alleged essentially that defendants breached their employment contract by discharging plaintiff against his will. Plaintiff alleged in count II that defendants breached their employment contract by discharging plaintiff without following the church's rules and

regulations. In count III, plaintiff alleged a claim against the defendants for intentional infliction of emotional distress.

Defendants denied the allegations in the first two counts of the complaint and unsuccessfully moved to dismiss the third count. They alleged in their counterclaim that the church supplied plaintiff with a parsonage as part of his compensation. Defendants further alleged that when the church discharged plaintiff, he was required to vacate the parsonage but failed to do so. Defendants sought $10,000 in damages and an order to evict plaintiff from the parsonage.

The cause proceeded to a jury trial. The record shows that the trial judge denied defendants' motion for a directed verdict at the close of plaintiff's case and again at the close of the evidence. On September 19, 1986, the jury returned a verdict for plaintiff on his action against defendants and awarded him $40,000 in damages. The jury returned a verdict for plaintiff also on defendants' counterclaim. The trial judge entered judgments on the verdicts and denied defendants post-trial relief. Defendants appeal.

OPINION

■■ Defendants first contend that the trial judge abused his discretion by denying their motion for a directed verdict. A trial judge should enter a directed verdict in a case only when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) We now apply this standard to each count of plaintiff's complaint.

I

A

Plaintiff alleged in count I essentially that defendants breached their employment contract by discharging him against his will. The record shows that the church offered plaintiff his pastoral office in a letter dated June 1, 1945. The offer fixed no employment period; it provided that plaintiff would receive a starting salary of $150 per month in addition to the right to live in the parsonage. In a letter dated June 14, 1945, the church amended its offer to provide that if either it or plaintiff became dissatisfied with their relationship, the dissatisfied party would give the other a 90-day notice of termination. Plaintiff accepted the church's offer in a letter dated June 27, 1945.

■■ As a matter of law, either an employer or an employee may

terminate employment based on a yearly salary, without cause, if no employment period is otherwise stated. *Bethany Reformed Church v. Hager* (1980), 84 Ill. App. 3d 684, 687, 406 N.E.2d 93, 95, citing *Atwood v. Curtiss Candy Co.* (1959), 22 Ill. App. 2d 369, 373, 161 N.E.2d 355, 357.

■ Applying this rule to the evidence presented at trial, it is clear that count I must fail. The church's offer set no employment period. Plaintiff's employment was, therefore, at will and either he or defendants could have terminated it without cause. Thus, defendants could not have breached the employment contract solely by discharging plaintiff against his will. In terms of the *Pedrick* standard for directed verdicts, we conclude that all of the evidence, viewed in its aspect most favorable to plaintiff, so overwhelmingly favored defendants that no contrary verdict based on this evidence could ever stand. We hold that the trial judge should have directed a verdict in favor of defendants on count I of the complaint.

### B

Plaintiff alleged essentially in count II that defendants breached their employment contract by discharging him without following the church's rules and regulations. The trial adduced the fact that a Baptist church is congregational in nature. No hierarchy or superior authority exists; the congregation is the chief decisionmaker on major issues. The congregation decides an issue on a democratic basis, at a meeting that follows adequate notice.

The record contains evidence that defendant Hayes wrote a letter containing charges against plaintiff. The letter, dated July 27, 1984, was the subject of a special church business meeting on that same date. Plaintiff was not present at the July 27 meeting. A majority of the members present at the meeting voted by a vote of 30 to 2 to discharge plaintiff.

The record further shows that a dispute arose in the church over the notice of the July 27 meeting. The record discloses that the issue of plaintiff's employment was discussed again at the church's regular business meeting on August 3, 1984. Plaintiff attended that meeting with 73 members of the congregation. They took another vote; a majority of those present again, by a vote of 39 to 26 (with 8 not voting), voted to discharge plaintiff. Plaintiff received a letter from defendant Hayes, dated September 15, 1984, reminding him of the July 27 and August 3 meetings and of the resulting discharge. The letter also reminded plaintiff that he should vacate the parsonage on or before November 1, 1984, which was 90 days after the August 3 meeting.

Plaintiff contended at trial, and continues to argue here, that the notice of both the July 27 and August 3 meetings was defective. He argues, therefore, that both meetings were illegal and, consequently, the discharge votes at both meetings were invalid. Plaintiff concludes that defendants breached the employment contract because he was improperly discharged.

After reviewing the record as a whole, we conclude that plaintiff and the congregation received ample notice of the intended discharge vote, at least by the August 3, 1984, regular business meeting. We note at the outset our earlier conclusion that, as a matter of law, plaintiff's employment was at will; the congregation could discharge him at anytime. The issue here is whether the congregation followed its own procedures in so doing, in addition to giving plaintiff his contractual 90 days' notice. We further note the evidence in the record that the church customarily did not follow its own procedures to the letter, but rather used a flexible approach corresponding to its small size and modest resources.

■ We have held generally that effective notice is a notice that is so full and clear as to inform persons of ordinary intelligence what is proposed. The test is whether the persons involved should have anticipated the possible effects and orders. (*Department of Revenue v. Jamb Discount* (1973), 13 Ill. App. 3d 430, 435, 301 N.E.2d 23, 27.) Further, " '[t]he object of notice is to inform the party notified, and if the information is obtained in any way other than by formal notice, the object of notice is attained.' " *In re Marriage of Garde* (1983), 118 Ill. App. 3d 303, 308, 454 N.E.2d 1065, 1069, quoting *Schumacher v. Wolf* (1905), 125 Ill. App. 81, 84.

Plaintiff presented evidence at trial that the church's July 22, 1984, Sunday bulletin did not contain a notice to the congregation of the July 27 meeting and the scheduled discussion of his employment. Plaintiff also presented evidence that defendants did not notify him of that meeting. The record contains evidence, however, that someone announced the July 27 meeting at the July 22 Sunday service. The record also contains evidence that defendant Hayes sent plaintiff, by certified mail, a copy of the charges filed against him.

Plaintiff also argued at trial that neither he nor the congregation received notice that the issue of his employment would be discussed at the church's August 3, 1984, regular business meeting. The record contains evidence, however, that at the July 29 Sunday service, someone announced that plaintiff's employment would be discussed at the August 3 meeting. The record further shows that not only was plaintiff present at the August 3 meeting, but also that he received notice

of it at the July 29 Sunday service.

■ We find that, at least by August 3, 1984, both plaintiff and the congregation knew that the church would hold its regular monthly business meeting that night and that plaintiff's employment would be at issue. Further, plaintiff does not dispute that, if his discharge was proper, his 90 days' notice began to run from the August 3 meeting. The record indicates that the church allowed him until November 1, 1984, to vacate the parsonage. We conclude that defendants properly discharged plaintiff. We further conclude that all of the evidence, viewed in its aspect most favorable to plaintiff, so overwhelmingly favored defendants that no contrary verdict based on this evidence could ever stand. We hold that the trial judge should have directed a verdict in favor of defendants on count II of the complaint.

## II

■ In count III of his complaint, plaintiff stated a cause of action for intentional infliction of emotional distress. To recover under this theory, a plaintiff must prove by a preponderance of the evidence that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress that the plaintiff suffered was severe; and (3) the defendant's conduct was such that the defendant knew that severe emotional distress would be certain or substantially certain to result. *Harris v. First Federal Savings & Loan Association* (1984), 129 Ill. App. 3d 978, 980-81, 473 N.E.2d 457, 459, citing *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.

Further, the conduct must be, in fact, extreme and outrageous, extending beyond mere insults, threats and indignities. Even tortious or malicious intent may be insufficient for this element; courts will find liability " 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767, quoting Restatement (Second) of Torts, sec. 46, comment *d* (1965).) Additionally, " '[t]he emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc., may fall within the ambit of the term "emotional distress," these mental conditions alone are not actionable. "The law intervenes only where the distress infliction is so severe that no reasonable man could be expected to endure it ***." ' " *Witkowski v. St. Anne's Hospital* (1983), 113 Ill. App. 3d 745, 753, 447 N.E.2d 1022, quoting *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767.

Plaintiff presented evidence at trial, and argues here, that defendants' extreme and outrageous conduct consisted of their plans to "systematically and disrespectfully oust their pastor of forty years." Plaintiff argues that their conduct began by calling the July 27, 1984, church meeting. Plaintiff argues that it continued at the August 3, 1984, meeting. Plaintiff opened the meeting and began to preside over it as he traditionally had done as pastor. Defendant Hayes, however, declared that he himself would preside over the meeting. Hayes also asserted that plaintiff would no longer be pastor, and Hayes told plaintiff to be silent.

Plaintiff presented evidence of several other specific examples of what he believes to be defendants' extreme and outrageous conduct. During a Sunday service in September 1984, plaintiff attempted to enter the church's pulpit. The individual defendants, however, blocked his path and told him that the pulpit was "void." During the service for the first Sunday in October 1984, plaintiff approached the communion table to administer the sacrament. The individual defendants, however, pulled him away from the table and told him that he could no longer serve communion. On the first Sunday in November 1984, plaintiff discovered that the individual defendants had changed the locks of the church so that he could not enter. Plaintiff then entered through the front door and approached the pulpit. The individual defendants blocked his path, with arms locked, and told him that he could no longer conduct services. Plaintiff presented evidence also of how this conduct injured him, both mentally and physically.

■ After reviewing the record, we are constrained to conclude that plaintiff failed to prove the elements of the offense of intentional infliction of emotional distress. We cannot condone certain acts of defendants; yet, their conduct simply did not rise to a level of outrageous conduct beyond all possible bounds of decency. Further, we cannot say that a reasonable person in plaintiff's position would have found defendants' actions impossible to endure. As we noted in *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 466 N.E.2d 1137:

> "Personality conflicts, questioning of job performance and job transfers, whether for disciplinary or management purposes, are unavoidable aspects of employment. Frequently, they produce concern and distress for the affected employee. Yet, if the distress from such incidents was deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress." 126 Ill. App. 3d at 166, 466 N.E.2d at 1144, quoted in *Harris v. First Federal Savings & Loan As-*

*sociation* (1984), 129 Ill. App. 3d 978, 981, 473 N.E.2d 457, 459.

Plaintiff analogizes defendants to officers in a corporation who abuse their power over the corporate employee, himself in this case. Relying on *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829, plaintiff argues that defendants' abuse of power aggravates the outrageousness of their conduct. In that case, however, plaintiff alleged, *inter alia*, that defendant employer ordered him to falsify certain work reports. When plaintiff consistently refused, defendant retaliated against him by coercion and harassment. The *Milton* court held that plaintiff adequately stated a cause of action for intentional infliction of emotional distress. The court based its holding on the fact that by demanding plaintiff falsify his work reports, defendant, as a public utility, was attempting to coerce plaintiff to engage in illegal conduct. 101 Ill. App. 3d at 79-81, 427 N.E.2d at 832-33.

We have limited *Milton* strictly to its facts in several subsequent cases. (*Gibson v. Chemical Card Services Corp.* (1987), 157 Ill. App. 3d 211, 218-19, 510 N.E.2d 37, 41; *Burgess v. Chicago Sun-Times* (1985), 132 Ill. App. 3d 181, 187-88, 476 N.E.2d 1284, 1289; *Harris v. First Federal Savings & Loan Association* (1984), 129 Ill. App. 3d 978, 982, 473 N.E.2d 457, 460.) Although we do not disagree with *Milton*'s result or its rationale, we conclude that the facts here are clearly distinguishable from those of *Milton*.

■ The existence of a relationship between a plaintiff and a defendant, by which defendant possesses actual or apparent authority to damage plaintiff's interests, does not relieve plaintiff of the burden of proving the extreme and outrageous nature of defendant's conduct. "Conduct which otherwise amounts to no more than insults or indignities will not be deemed to be extreme and outrageous simply by virtue of some special relationship which exists between the parties." *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 856, 392 N.E.2d 591, 596, quoted in *Gibson v. Chemical Card Services Corp.* (1987), 157 Ill. App. 3d 211, 221, 510 N.E.2d 37, 43.

We conclude that all of the evidence, viewed in its aspect most favorable to plaintiff, so overwhelmingly favored defendants that no contrary verdict based on this evidence could ever stand. We hold that the trial judge should have directed a verdict in favor of defendants on count III of the complaint.

### III

■ We now address what the trial court should do with this cause

on remand. In their counterclaim, defendants sought $10,000 in damages from plaintiff and an order to evict plaintiff from the parsonage. It is undisputed that the church supplied plaintiff with the parsonage as part of his compensation. We have held that defendants properly discharged plaintiff. It follows, therefore, that plaintiff must vacate the parsonage. (*Bethany Reformed Church v. Hager* (1980), 84 Ill. App. 3d 684, 687, 406 N.E.2d 93, 95.) Further, our review of the record fails to disclose that the defendants have proven their counterclaim for money damages. The trial court on remand, therefore, should enter judgment for defendants on their counterclaim, but granting them only an eviction order as their sole relief.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded to the trial court with directions that it: (1) enter judgment for defendants on the counterclaim; but (2) grant defendants only an order of eviction as their sole relief.

Reversed and remanded, with directions.

McMORROW, P.J., and JIGANTI, J., concur.