STEVEN LUNDY et al., Plaintiffs-Appellants, v. THE CITY OF CALU-
MET CITY et al., Defendants-Appellees.

First District (4th Division)   No. 1—90—1978

Opinion filed February 14, 1991.

Michael N. Bledsoe, of Meyers, Bledsoe & Tuohy, of Chicago, for appellants.

Stuart D. Gordon, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs appeal from an order of the circuit court dismissing the intentional infliction of emotional distress counts of their complaint.

The plaintiffs' complaint alleges that the plaintiffs, Steven Lundy and James Rupcich, are police officers in the employ of defendant, the City of Calumet City (the City). On October 4, 1989, the City administered a psychological test to the members of the police force. A few weeks later, after receiving the results of the testing, defendant Police Chief Steven Rhoads sent a memorandum to Officers Lundy and Rupcich. The memorandum was distributed to the plaintiff officers via other police personnel. It was not folded or sealed.

In the memorandum Rhoads informed the plaintiffs that the results of their psychological tests indicated that the tests were indeterminate and likely invalid. He noted that test results such as theirs occurred either when the test taker deliberately manipulated the test or had mental problems. Rhoads also informed Officers Lundy and Rupcich that they were henceforth relieved of uniformed duty and were to refrain from wearing their guns or badges until further no-

tice. Rhoads assigned the officer plaintiffs to positions in the records section of the police department, forbade them from accepting overtime or secondary employment, and instructed them to submit to retesting on November 6, 1989. In addition to generating the above memorandum, Rhoads contacted two members of the Calumet City Council and the mayor of Calumet City. He informed these City officials that Officer Lundy's test results indicated that he was in "a confused state," "exhibited a plea for help," and suffered from either schizophrenia or hysteria. Other officers who received indeterminate evaluations as a result of the psychological testing were not reassigned or relieved of their guns and badges. On November 6, 1989, a week after the memorandum was issued, Officers Lundy and Rupcich were retested and subsequently allowed to return to regular duty. As a result of the actions of Rhoads, Lundy and Rupcich suffered loss of sleep, chest pains, and mental and emotional distress which necessitated medical treatment.

The plaintiffs filed suit against Police Chief Rhoads and the City of Calumet City alleging that the defendants' conduct gave rise to an action for intentional infliction of emotional distress. In response, the defendants moved to dismiss the plaintiffs' emotional distress counts for failure to state a cause of action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) The defendants also filed an alternative section 2—619 motion to dismiss alleging that the defendants were immune from prosecution under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 et seq.). (Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) The trial court granted the defendants' section 2—615 motion to dismiss for failure to state a cause of action and struck the section 2—619 motion as premature. The plaintiffs follow with this appeal.

■ The plaintiffs agree with the defendants that to successfully state a cause of action for intentional infliction of emotional distress, they must allege conduct which is so extreme and outrageous that it goes beyond all possible bounds of decency. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.) The plaintiffs' complaint characterizes the following actions of defendant Rhoads as extreme and outrageous: stripping plaintiffs Lundy and Rupcich of their badges and guns; making public statements asserting the plaintiffs had either manipulated the test or were suffering from mental illness; cloaking the public statements as official findings in an official order; and purposefully sending the order unsealed, uncovered, and publicly through other officers. The plaintiffs also argue that the extreme and outrageous character of the defendants' conduct arises from an abuse

of Rhoads' position of authority over the plaintiffs. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765.

Interpreting the plaintiffs' allegations in a light that is most favorable to them (*McGrath v. Fahey* (1988), 126 Ill. 2d 78, 533 N.E.2d 806), we do not believe that the plaintiffs have succeeded in pleading a cause of action for intentional infliction of emotional distress. The conduct the plaintiffs allege does not in and of itself amount to conduct that would cause severe emotional distress to a person of ordinary sensibilities. (*Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591.) To successfully plead a cause of action for intentional infliction of emotional distress, the plaintiffs must allege conduct that goes beyond mere insults, indignities, threats, annoyances, petty oppressions or trivialities. (*Public Finance Corp v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765.) It is not enough that the defendant acts with a tortious or even criminal intent, that he intended to inflict emotional distress, or that his conduct can be characterized by malice. (Restatement (Second) of Torts §46, comment *d*, at 72-73 (1965).) Further, the emotional distress must be "so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts §46, comment *j*, at 77-78 (1965).

■ In the present case, it is uncontroverted that the psychological test results were indeterminate as to the mental health of the plaintiffs. The defendant Rhoads, acting in his official capacity as chief of police, addressed a situation that clearly called for an administrative response. He relieved the plaintiffs of active duty until they could be retested. He informed them of the reason they were being relieved of duty and indicated the steps necessary to regain active-duty status. This information was conveyed to the plaintiffs by way of official documentation. While it may have been insensitive of Rhoads to deliver the memorandum unsealed through other police personnel, there is no indication that documents of this kind were routinely delivered otherwise. Chief Rhoads also informed City officials of the police department's concerns and the action that was being taken. The plaintiffs were retested within a week of receiving the memorandum and were allowed to return to active duty upon the City's receipt of conclusive test results. The incident under scrutiny was an isolated occurrence, the defendants' response was timely, and the event was brought to an expeditious conclusion. The plaintiffs have not alleged that they were threatened or subjected to a recurring pattern of abusive contact. (*Gibson v. Chemical Card Services Corp.* (1987), 157 Ill.

App. 3d 211, 510 N.E.2d 37.) We do not believe that the conduct alleged by the plaintiffs was extreme and outrageous.

Moreover, Rhoads' authority over Lundy and Rupcich does not relieve the plaintiffs of the burden of proving the extreme and outrageous nature of the conduct. Conduct which otherwise amounts to no more than insults or indignities is not transformed into extreme and outrageous conduct simply by virtue of an employer-employee relationship. (*Cf. Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591 (landlord-tenant relationship did not transform insults or indignities into extreme and outrageous conduct).) In the present case, in light of his legitimate interest in assuring the mental stability of his officers before they were allowed to continue active police duty, Rhoads' actions cannot be considered gratuitous. He did not attempt to coerce the plaintiffs, nor did he threaten them. (See *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829.) While a legitimate interest does not provide an employer with carte blanche to pursue its objective through any means (*McGrath v. Fahey* (1988), 126 Ill. 2d 78, 533 N.E.2d 806), the fact that defendant Rhoads may have caused the plaintiffs some embarrassment or distress does not mean that he has abused his position such that conduct that is not extreme and outrageous is raised to the level necessary to sustain a cause of action for intentional infliction of emotional distress. (See *Gibson v. Chemical Card Services Corp.* (1987), 157 Ill. App. 3d 211, 510 N.E.2d 37.) As for any other officers who were not similarly treated, as the trial judge noted, the fact that the City may have failed to pursue its objectives with respect to the other officers does not detract from the legitimacy of its concerns over the test results of Officers Lundy and Rupcich.

For these reasons we affirm the ruling of the trial court. Because we do not believe that the defendants' conduct was extreme and outrageous, it is not necessary for us to consider the defendants' alternative argument that the defendants are immune from suit under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*).

Affirmed.

JOHNSON and McMORROW, JJ., concur.