JAMES GRAHAM, Plaintiff-Appellee and Appellant, v. COMMONWEALTH EDISON COMPANY *et al.*, Defendants-Appellants and Appellees.

First District (5th Division)   Nos. 1—99—0345, 1—99—3441 cons.

Opinion filed December 29, 2000.—Rehearing denied February 21, 2001.

QUINN, P.J., dissenting.

M. Megan O'Malley, of Chicago, for James Graham.

Richard J. O'Brien, Eric S. Mattson, and Christopher S. Niewoehner, all of Sidley & Austin, of Chicago, for Commonwealth Edison Company, David Andrews, and Steven Blush.

738

JUSTICE THEIS delivered the opinion of the court:

Commonwealth Edison and David Andrews[1] (ComEd) appeal from an order denying their motion to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1998)) on the retaliatory discharge count, which is appeal number 1—99—0345. James Graham (Graham) appeals from an order dismissing his intentional infliction of emotional distress count under section 2—615 of the Code, which is appeal number 1—99—3441.

Graham filed his third amended complaint against ComEd, alleging defamation, intentional infliction of emotional distress, negligent infliction of emotional distress and retaliatory discharge. ComEd filed a motion to dismiss Graham's complaint pursuant to section 2—615, alleging that the complaint failed to state a cause of action upon which relief could be granted. The trial court granted the motion with prejudice with respect to the defamation and negligent infliction of emotional distress counts. ComEd sought an interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) and the circuit court certified the retaliatory discharge question: whether plaintiff has stated a claim for retaliatory discharge where plaintiff has not been terminated and actually continues to work for the defendant, but where the plaintiff has allegedly been demoted. This court then accepted the question for appeal number 1—99—0345 under Supreme Court Rule 308.

The circuit court denied ComEd's motion for interlocutory appeal with respect to the intentional infliction of emotional distress claim. ComEd then renewed its motion, which was denied. ComEd brought a second motion to dismiss the intentional infliction of emotional distress claim pursuant to section 2—615, which was granted. Graham then appealed from that final order, constituting the second appeal here, number 1—99—3441. These appeals were then consolidated. We now reverse on both appeals. The retaliatory discharge claim is dismissed, and we remand the intentional infliction of emotional distress claim to the trial court.

Graham and ComEd present three issues in these consolidated appeals: (1) whether count IV of Graham's third amended complaint states a cause of action for retaliatory discharge where Graham continues to work for ComEd but has been discharged from his managerial position; (2) whether, if Graham was not discharged from his position, Graham has adequately pleaded retaliatory demotion and whether Illinois law recognizes a cause of action for retaliatory demo-

---

[1]Defendant Steven Blush has not been served, has not appeared and is not considered on this appeal.

tion; and (3) whether count II of Graham's third amended complaint states a cause of action for intentional infliction of emotional distress where Graham alleged that ComEd abused its position of power over Graham and engaged in a campaign of harassment against him because Graham reported that ComEd was violating nuclear safety regulations.

Graham's complaint against ComEd alleges that he was demoted after making complaints concerning safety issues and statutory violations at ComEd's Dresden nuclear power station. In his complaint, Graham states that he began working for ComEd in July 1983 as a general clerk in the ComEd data processing department. Late that year, Graham was promoted to the position of nuclear plant operator and, in 1988, to health physics technician. At all times, he "performed his job duties and responsibilities in an above average manner." In 1995, Graham was promoted to acting foreman and lead radiation technician where he had managerial and supervisory duties.

In December 1995, the United States Nuclear Regulatory Commission (NRC) began an independent investigation into allegations of safety violations, as well as harassment, intimidation and discrimination at the Dresden station. Graham reported safety violations to his supervisors, ComEd's quality first department, which was designed to handle employee concerns anonymously, and finally to the NRC in December 1995 and January 1996. Shortly thereafter, ComEd began its own independent investigation concurrently with the NRC investigation. The NRC instructed ComEd to immediately report any information resulting from its internal investigation to the NRC. According to the allegations of the complaint, at the time ComEd joined the investigation, it was aware of who was responsible for the vandalism and harassment incidents and knew Graham was not one of those individuals.

ComEd then began the investigation into Graham. During the investigation, ComEd revealed to Graham that it knew he had made anonymous complaints to the quality first department and then gave Graham the choice of resigning or facing prosecution for harassing and intimidating coworkers. Graham refused to resign and was then escorted out of the building on a two-week suspension. Graham later met with the NRC investigators, who stated that they had no knowledge of any allegations against Graham and had never even heard his name before. Twenty of Graham's coworkers then started a letter-writing campaign, denying the allegations against Graham and praising his work performance and people skills.

ComEd then began interviewing over 100 employees concerning the allegations against Graham. ComEd, the complaint alleges, had

knowledge that these allegations against Graham were false. In the interviews, ComEd made several allegedly defamatory statements and then requested that the interviewees confirm their knowledge of this behavior. The statements alleged that Graham planted radioactive material outside the posted area for such material and that he falsified documents. ComEd stated that Graham threatened coworkers and supervisors with physical violence and that he had "beaten people up." The statements also alleged that Graham followed a woman coworker home one evening and threatened her with physical violence and had sexually harassed women coworkers. Additional allegations included that Graham damaged cars and other property at the Dresden station, interfered with ComEd's investigation by telling employees not to answer the investigator's questions or otherwise cooperate and that Graham and another employee were the leaders of a gang called the "Magnificent Seven." During the investigation, Graham and another coworker were reassigned to an abandoned facility, the Mazon facility, for almost two months. At that facility, they had to remain in one room for the entire day with virtually no work to do.

As a result of these allegations, Graham alleges he has suffered severe mental and emotional distress. He spoke with someone at the ComEd employee assistance program who referred him to a therapist upon his request. In February 1996, Graham began seeing a psychologist. Graham also complained of physical manifestations of this job-related distress; he suffered from headaches, stomach discomfort, lack of sleep, and loss of appetite and saw a dermatologist for stress-related acne. Graham repeatedly informed ComEd of this distress and also that the stress was ruining his marriage.

In April 1996, ComEd finished its investigation and found the allegations against Graham to be unsubstantiated. However, ComEd never informed its employees that the charges against Graham were false. ComEd then transferred Graham back to the Dresden station, not as acting foreman, but as a nuclear plant operator. Graham requested to be reinstated to his former position, but was told he had no choice in the matter. The new position resulted in a pay cut, a demotion and no supervisory or managerial duties. He was then transferred to the radiation department as a health physics technician. Since then, he has not been promoted or given any meaningful job responsibilities.

In count II of the complaint, Graham asserts a claim for intentional infliction of emotional distress. Graham alleges that the $7^{1}/_2$ weeks spent in the abandoned facility with no work to do caused Graham to suffer extreme emotional distress. Further, ComEd's making and publishing of defamatory statements with either knowledge or reck-

less disregard of their falsity caused Graham emotional distress. The complaint alleges that the conduct was extreme and outrageous, ComEd abused its position of power over Graham and the investigation was solely for the purpose of harassing Graham because he reported safety violations to the NRC. Graham also alleges that ComEd knew Graham was suffering from severe emotional distress and knew that he was seeing a therapist. Graham alleged he suffered physical injury as a result of ComEd's conduct, including physical illness, marital problems, humiliation, loss of confidence, loss of friends and extensive damage to his professional reputation.

In count IV, Graham asserts a claim for retaliatory discharge. Graham alleges he was discharged from his managerial position, despite his request to return to his previous position, in retaliation for making complaints regarding safety violations to ComEd and the NRC. His right to make safety complaints is protected under the Energy Reorganization Act (42 U.S.C.A. § 5851 *et seq.* (West 1995)), which is a clear public policy. As a result of his discharge, Graham alleges he suffered injury, including loss of back pay, lost future earnings, training, loss of bonuses, compensatory and punitive damages.

■ Both counts of the complaint at issue here were dismissed pursuant to a section 2—615 motion; thus, the only question before this court is whether the dismissed counts state causes of action. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 150-51, 713 N.E.2d 679, 681 (1999). A cause of action will not be dismissed on the pleadings unless it clearly appears that the plaintiff cannot prove any set of facts that will entitle it to relief. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424, 712 N.E.2d 330, 333 (1999); *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997). In ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint as well as all reasonable inferences that can be drawn therefrom. *Sherman v. Kraft General Foods, Inc.*, 272 Ill. App. 3d 833, 835, 651 N.E.2d 708, 710 (1995). Therefore, in reviewing the trial court's ruling on defendant's section 2—615 motions to dismiss, we apply the *de novo* standard of review. *Board of Directors*, 186 Ill. 2d at 424, 712 N.E.2d at 333.

The first issue is whether Graham's third amended complaint sufficiently pleaded a cause of action for retaliatory discharge. Graham alleges that he was discharged from his managerial position in retaliation for making complaints about safety violations. He contends that his right to make safety complaints is protected by the Energy Reorganization Act and his discharge therefore violates a clear mandate of public policy. ComEd responds that Graham must allege an actual dis-

charge or termination from employment in order to adequately allege retaliatory discharge, which he failed to do.

■ A plaintiff must allege three elements to state a valid claim for the tort of retaliatory discharge: (1) that plaintiff was discharged; (2) that the discharge was in retaliation for his or her activities; and (3) that the discharge violates a clear mandate of public policy. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 35, 645 N.E.2d 877, 880 (1994). "Discharge in an employment context is commonly understood to mean the release, dismissal, or termination of an employee." *Welsh*, 306 Ill. App. 3d at 153, 713 N.E.2d at 683, citing Webster's Third New International Dictionary 644 (1993); Black's Law Dictionary 463 (6th ed. 1990). The tort of retaliatory discharge does not encompass any behavior other than actual termination of employment. *Welsh*, 306 Ill. App. 3d at 153, 713 N.E.2d at 683. Further, the element of discharge is essential to the retaliatory discharge tort. *Zimmerman*, 164 Ill. 2d at 38, 645 N.E.2d at 882.

■ In this case, Graham has not alleged that he was discharged as that term was defined in *Welsh*. Graham was not dismissed or terminated from employment with ComEd; in fact, he continues to work for ComEd. We refuse to expand the definition of "discharge" to encompass the discharge from one position to a lower position, or a "constructive discharge," based on a long line of authority. *Zimmerman*, 164 Ill. 2d at 39, 645 N.E.2d at 882. See also *Welsh*, 306 Ill. App. 3d at 153, 713 N.E.2d at 683; *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 163, 601 N.E.2d 720, 730 (1992); *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 530-31, 519 N.E.2d 909, 912 (1988).

Graham attempts to distinguish *Welsh* on the basis that those plaintiffs sought recovery only under "retaliatory demotion" or "retaliatory constructive discharge" theories and did not ask the court to find their demotion to be a discharge, as Graham does. However, the plaintiffs' argument in *Welsh* is very similar to Graham's: "The plaintiffs seem to premise these counts on the theory that their demotion and placement in new jobs at different locations with different duties, obligations, and benefits constitutes a discharge." *Welsh*, 306 Ill. App. 3d at 153, 713 N.E.2d at 683. The *Welsh* court rejected plaintiff's argument for the same reasons that we reject Graham's argument here—there had been no actual discharge from employment from ComEd to support a retaliatory discharge claim.

Graham relies on *Richards v. Detroit Free Press*, 173 Mich. App. 256, 259, 433 N.W.2d 320, 322 (1988), where the court found that a demotion from one position to a lower position could support a retaliatory discharge claim. A Michigan case, it is unpersuasive and factually distinguishable. There, the plaintiff presented sufficient evidence that

he had a legitimate expectation that he could only be demoted for just cause. Based on that fact, the court found a demotion to a lower position without cause could sustain a retaliatory discharge claim. However, here, Graham was an at-will employee. Further, the weight of Illinois authority contradicts the holding in *Richards*.

In a footnote in his brief, Graham argues that, if the court were to accept ComEd's position, then this court "would have to embrace the preposterous proposition that Commonwealth Edison could 'demote' its Chief Executive Officer to a meter reader without terminating his position." The plaintiff in *Zimmerman* offered a nearly identical argument, which the court subsequently rejected, stating "[w]e note that plaintiff's complaint offers no facts remotely comparable to her hypothetical examples." *Zimmerman*, 164 Ill. 2d at 40, 645 N.E.2d at 882. We similarly dismiss Graham's argument. We hold that Graham did not sufficiently plead the first element of retaliatory discharge because he did not allege actual discharge. He must plead all three elements; thus, we need not discuss the other two. Therefore, we reverse the trial court's denial of ComEd's motion to dismiss pursuant to section 2—615.

The second issue presented on appeal is whether Graham's complaint sufficiently alleges a cause of action for retaliatory demotion and whether Illinois recognizes such a tort. Graham argues that he has sufficiently pleaded the necessary facts and that Illinois does, or should, recognize a tort of retaliatory demotion in violation of Illinois public policy. ComEd argues that Illinois law, as stated in *Zimmerman*, clearly rejects a retaliatory demotion tort.

▪ Illinois continues to follow the general rule that an at-will employee may be discharged by his or her employer for any reason at any time. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 17-18, 694 N.E.2d 565, 568 (1998). However, the Illinois Supreme Court created a limited exception in a retaliatory discharge claim for employees fired for asserting their rights under the Worker's Compensation Act (see 820 ILCS 305/1 *et seq.* (West 1996)) or for "whistle-blowing." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). See also *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981). Illinois courts have subsequently maintained the narrow scope of the retaliatory discharge tort. *Buckner*, 182 Ill. 2d at 19, 694 N.E.2d at 569 (declining to expand retaliatory discharge to allow a plaintiff to sue the agent of plaintiff's former employee who carried out the discharge). See, *e.g.*, *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505, 568 N.E.2d 870, 875 (1991) (noting that retaliatory discharge is a "limited and narrow cause of action"); *McGrath v. CCC Information Services, Inc.*, 314 Ill. App. 3d 431, 438, 731 N.E.2d 384, 390

(2000) ("the supreme court has repeatedly and consistently emphasized a goal of restricting the tort of retaliatory discharge").

Following this narrow interpretation of retaliatory discharge, five justices of the Illinois Supreme Court in *Zimmerman* expressly rejected a cause of action for retaliatory demotion. "In the instant case we are asked to extend the existing law to circumstances in which an employee suffers a loss of employment status or income or both, but is not terminated from her employment altogether. Such an expansion of current law would be significant, given the consistent refusal of the courts of this State to dilute the discharge requirement." *Zimmerman*, 164 Ill. 2d at 38-39, 645 N.E.2d at 882. The court then declined to extend retaliatory discharge to include retaliatory demotion. Appellate courts have also refused to recognize retaliatory demotion. *Hindo v. University of Health Sciences/Chicago Medical School*, 237 Ill. App. 3d 453, 604 N.E.2d 463 (1992); *Bryce v. Johnson & Johnson*, 115 Ill. App. 3d 913, 450 N.E.2d 1235 (1983).

Graham attempts to distinguish *Zimmerman* and argues that we should expand retaliatory discharge to include demotion because the facts here support such expansion, unlike the facts in *Zimmerman*. However, the supreme court reiterated its position against retaliatory demotion in *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 468, 722 N.E.2d 1115, 1121 (1999). We are bound by the supreme court's holdings in *Zimmerman* and *Fisher* and lack the authority to overrule or modify the supreme court's decision. *Welsh*, 306 Ill. App. 3d at 153, 713 N.E.2d at 682. We therefore decline to recognize the tort of retaliatory demotion and reject Graham's claim.

Graham further cites several cases from other states which recognize retaliatory demotion. However, when we have Illinois case law directly on point, we need not look to other states for guidance. The law in Illinois is clear that Illinois courts have refused to expand the theory of retaliatory discharge beyond the element of actual termination. *Pope v. Inland Property Management Inc.*, 878 F. Supp. 1114, 1117 (N.D. Ill. 1995).

Graham next argues that the narrow scope of the tort of retaliatory discharge denies ComEd employees the remedy to which they are entitled under the Illinois Constitution. Graham then cites the "open courts" provision of the Illinois Constitution, which states: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, § 12. However, this provision has been held to be merely "an expression of philosophy and does not mandate the creation of a cause of action or remedy in each case where one does not

exist." *Stephens v. Trinity Medical Center*, 292 Ill. App. 3d 165, 170, 685 N.E.2d 403, 406 (1997). See also *Bart v. Board of Education of the City of Chicago*, 256 Ill. App. 3d 880, 886, 632 N.E.2d 39, 43 (1993). We therefore reject Graham's argument.

We next address the third issue on appeal: whether Graham's third amended complaint sufficiently pleads a cause of action for intentional infliction of emotional distress. Graham argues that his complaint sufficiently alleges that ComEd's conduct was extreme and outrageous. He alleges that ComEd abused its position of power over him to retaliate against and punish him for reporting safety violations, without a legitimate motive. He claims that the investigation, transfer to an abandoned facility without any work, and his demotion all resulted in severe emotional distress. ComEd contends that this court's decision in *Welsh* mandates the dismissal of this claim because Graham has not sufficiently pleaded that the conduct was extreme and outrageous.

■ In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Welsh*, 306 Ill. App. 3d at 154, 713 N.E.2d at 683; *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988). Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances. *Fahey*, 126 Ill. 2d at 90, 533 N.E.2d at 811. Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767 (1976). Liability only attaches in circumstances where the defendant's conduct is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " *Public Finance Corp.*, 66 Ill. 2d at 90, 360 N.E.2d at 767, quoting Restatement (Second) of Torts § 46, Comment *d* (1965). The distress inflicted must be so severe that no reasonable person could be expected to endure it. *Fahey*, 126 Ill. 2d at 86, 533 N.E.2d at 809. We first address whether ComEd's conduct against Graham was extreme and outrageous.

■ Our supreme court in *Fahey* set out several factors a court should consider when evaluating whether the alleged conduct is extreme and outrageous. *Fahey*, 126 Ill. 2d at 86-90, 533 N.E.2d at 809-11. First, the more power and control that a defendant has over a plaintiff, the more likely defendant's conduct will be deemed outrageous. *Fahey*, 126 Ill. 2d at 86, 533 N.E.2d at 809. This factor should

be viewed in conjunction with a second factor: whether the defendant reasonably believed that his objective was legitimate. *Fahey*, 126 Ill. 2d at 88, 533 N.E.2d at 810. A reasonable belief that his objective was legitimate does not automatically allow the defendant to pursue that objective by outrageous means, but it is a substantial factor in evaluating the outrageousness of the conduct. *Fahey*, 126 Ill. 2d at 88, 533 N.E.2d at 810. Another consideration is the defendant's awareness that the plaintiff is particularly susceptible to emotional distress. *Fahey*, 126 Ill. 2d at 89-90, 533 N.E.2d at 811. Behavior that would not normally be considered outrageous may be actionable if the defendant knows that the plaintiff is particularly susceptible. *Fahey*, 126 Ill. 2d at 90, 533 N.E.2d at 811.

■ However, courts often hesitate to find a claim for intentional infliction of emotional distress in employment situations. *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 410, 719 N.E.2d 1101, 1115 (1999). Courts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action. *Vickers*, 308 Ill. App. 3d at 410, 719 N.E.2d at 1115; *Miller v. Equitable Life Assurance Society*, 181 Ill. App. 3d 954, 957, 537 N.E.2d 887, 889 (1989).

With this hesitation, many courts have found abusive conduct not to be extreme and outrageous in employment situations where the employer had a legitimate purpose. In *Vickers*, the court found that the employer's bad-faith investigation into the plaintiff's alleged sexual harassment did not constitute extreme and outrageous conduct because there were no "assertions of a conspiracy or a systematic effort to remove plaintiff from his managerial position." *Vickers*, 308 Ill. App. 3d at 411, 719 N.E.2d at 1115. In *Lundy v. City of Calumet City*, 209 Ill. App. 3d 790, 791-92, 567 N.E.2d 1101, 1102 (1991), the defendant police department relieved the two plaintiff officers from uniformed duty, prohibited them from wearing their guns and badges, reassigned them to the record division, and told several other people that plaintiffs had mental problems after the results of their psychological tests were indeterminate. Once a second psychological test cleared plaintiffs of any mental deficiencies, the employer returned plaintiffs to full active duty. The court found that the employer had a legitimate interest in assuring the mental stability of its officers before allowing them to return to active duty and, therefore, found no intentional infliction of emotional distress. *Lundy*, 209 Ill. App. 3d at 794, 567 N.E.2d at 1103-04. See also *Grey v. First National Bank*, 169 Ill. App. 3d 936, 945, 523 N.E.2d 1138, 1144 (1988) (holding that

where the employer followed its internal policies and procedures for the disciplinary proceedings against plaintiff and did not extort or attempt to financially ruin him, plaintiff did not allege extreme and outrageous conduct).

Similarly, in *Gibson v. Chemical Card Services Corp.*, 157 Ill. App. 3d 211, 213, 510 N.E.2d 37, 38 (1987), the employer conducted an investigation into the alleged credit card theft by the plaintiff. While plaintiff alleged that, during the investigation, the employer threatened her with prison time, claimed her husband was also involved in the thefts and finally terminated her employment, the court found that the employer had a legitimate interest in investigating employee theft and rejected the intentional infliction of emotional distress claim. *Gibson*, 157 Ill. App. 3d at 219, 510 N.E.2d at 41-42.

Courts have found outrageous behavior where defendants threatened to exercise their power to coerce plaintiffs into doing something they would not otherwise do. *Rudis v. National College of Education*, 191 Ill. App. 3d 1009, 1014, 548 N.E.2d 474, 478 (1989). When an employer's conduct is both coercive and retaliatory, courts have generally found the conduct to be extreme and outrageous, constituting a claim for intentional infliction of emotional distress. In *Milton v. Illinois Bell Telephone Co.*, 101 Ill. App. 3d 75, 77, 427 N.E.2d 829, 831 (1981), the employer demanded that the plaintiff-employee falsify work reports in violation of state law. When he refused, the employer retaliated against plaintiff with an extensive course of harassment, discrimination and coercion. *Milton*, 101 Ill. App. 3d at 77, 427 N.E.2d at 831. The court found the employer's conduct in coercing plaintiff to do something illegal and then retaliating against him when he refused to do so constituted extreme and outrageous behavior. *Milton*, 101 Ill. App. 3d at 81, 427 N.E.2d at 833. Likewise, the court found the pattern of coercive pressure an employer placed on his employee by continually sexually harassing her, offering her money to perform sexual favors, and threatening to rape and kill her, coupled with the implied threat of job loss in the event she refused, was extreme and outrageous. *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 245-46, 561 N.E.2d 1245, 1251 (1990). In *Johnson v. Federal Reserve Bank*, 199 Ill. App. 3d 427, 432, 557 N.E.2d 328, 331 (1990), the court clarified the issue:

> "Engaging in abusive conduct to coerce an employee to follow lawful directions, while bad management, constitutes a legitimate objective. But the same abusive conduct, employed to punish whistle-blowing, serves no legitimate purpose."

■ Graham claims that the temporary reassignment and demotion were extreme and outrageous behavior. However, we reject those

claims as the everyday stress of the workplace. Graham also alleges that the sham investigation conducted by ComEd served no legitimate purpose, was retaliatory in nature and therefore constitutes extreme and outrageous conduct. We agree. In this case, Graham alleged ComEd pursued a five-month-long sham investigation of Graham in retaliation for Graham reporting nuclear safety violations to ComEd and the NRC. In this investigation, ComEd interviewed over 100 employees where it made several allegedly defamatory statements about Graham and then requested that the interviewees confirm their knowledge of this behavior. When the interviewees stated they had no knowledge of the allegations, ComEd repeated the defamatory statements and asked them again to confirm their knowledge of the claims. While supposedly investigating only vandalism and harassment, the statements included assertions that Graham falsified documents, planted radioactive material outside the posted area, was a leader of a gang, and other outrageous statements. Graham alleges that ComEd knew throughout the entire investigation that Graham was not involved in these incidents. We find Graham's allegations of a sham investigation for the sole purpose of retaliating against him because he reported that ComEd was violating nuclear safety regulations are sufficient to constitute extreme and outrageous behavior.

In *Welsh*, we are aware that another panel of this court found similar allegations by plaintiffs against the same defendant were not sufficient to establish this tort. *Welsh*, 306 Ill. App. 3d at 155, 713 N.E.2d at 684. However, that case is distinguishable because, there, plaintiffs based their claim for intentional infliction of emotional distress solely on plaintiffs' reassignment to a lower position, not on a sham investigation. Further, the *Welsh* court also based its holding on the fact that plaintiffs had not pleaded sufficient facts from which the level of severity of the emotional distress could be inferred. *Welsh*, 306 Ill. App. 3d at 155, 713 N.E.2d at 684. *Welsh* is therefore inapplicable to the present case.

Graham has sufficiently pleaded the second and third elements of the tort. Graham alleges that he suffered severe emotional and mental distress as a result of ComEd's conduct. He claims that ComEd knew of his distress and susceptibility because Graham repeatedly informed ComEd. He also spoke with someone in ComEd's employee assistance program and requested a referral to a therapist. He received treatment from a psychologist and also suffered physical manifestations of the distress. Graham endured stomach pain, lack of sleep, headaches, and saw a dermatologist for stress-related acne. Unlike in *Welsh*, Graham sufficiently pleaded detailed facts to show ComEd's conduct actually caused severe emotional distress. We find that Graham has

sufficiently pleaded a claim for intentional infliction of emotional distress to survive a section 2—615 motion to dismiss.

For the foregoing reasons, we reverse the trial court's denial of the motion to dismiss on the retaliatory discharge count, count IV of Graham's third amended complaint, dismissing this count entirely. We reverse the trial court's granting of the motion to dismiss the intentional infliction of emotional distress claim, count II. We remand to the trial court only the claim for intentional infliction of emotional distress.

Reversed and remanded in part.

GREIMAN, J., concurs.

PRESIDING JUSTICE QUINN, dissenting:

I concur with the reversal of the trial court's denial of the motion to dismiss on the retaliatory discharge count. As I would affirm the trial court's granting of the motion to dismiss plaintiff's intentional infliction of emotional distress claim, I dissent from that portion of the opinion.

I believe that this court's holding in *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 713 N.E.2d 679 (1999), is controlling. I do agree with the majority that the complaint in the instant case, unlike that in *Welsh*, pled sufficient facts from which the level of severity of the emotional distress could be inferred and that ComEd either intended or knew its conduct would inflict such emotional distress. I do not agree with the majority that the facts alleged in the complaint before us could support a finding that ComEd's conduct was extreme and outrageous.

The majority finds that the complaint's allegations regarding the "sham investigation" conducted by ComEd distinguish our facts from those alleged in the complaints reviewed in *Welsh*. I do not agree. The complaints in *Welsh* also relied heavily upon allegations that ComEd acted with a retaliatory purpose in taking actions against the plaintiffs in that case. As here, the plaintiffs in *Welsh* alleged that ComEd reassigned and demoted them in retaliation for their complaining about conditions and procedures at a ComEd nuclear power plant. *Welsh*, 306 Ill. App. 3d at 150.

The plaintiff's complaint does contain an allegation that Rob Marsh of the NRC told plaintiff that at the time ComEd became involved in the investigation, ComEd was aware plaintiff was not involved in the vandalism and harassment (see paragraph 23 of the third amended complaint). However, when this allegation is later

fleshed out, this allegation can be seen to be conclusory and not supported by a reasonable inference.

Under the heading "Defendant's Knowledge of the Falsity of its Allegations Against Plaintiff and Defendant's Continual Retaliation Against Plaintiff," the complaint states in pertinent part:

"33) *** Marsh told Plaintiff that he had no knowledge of any allegations against Plaintiff and that the NRC's investigation did not result in any allegations against Plaintiff. Indeed, Marsh told Plaintiff that he had never even heard Plaintiff's name before, from either the NRC's investigation or from Defendant.

34) Marsh further explained to Plaintiff, that when Defendant decided to join the investigation, that the NRC required that Defendant share all information with the NRC and that Defendant failed to inform the NRC either that Plaintiff and Phillips were the subject of investigation or that Plaintiff and Phillips had been suspended. Marsh concluded the meeting by informing Plaintiff that Plaintiff was not a suspect in the NRC's investigation and that the NRC had named their suspects even prior to the time that Defendant joined the investigation and had already informed Defendant of those suspects."

The above allegations do not support plaintiff's assertion that prior to beginning its investigation ComEd was aware plaintiff was not involved in the targeted activity. Nor do the above allegations support plaintiff's assertion that ComEd continued its investigation into plaintiff after it became aware plaintiff was not involved.

It should also be noted that the plaintiff's allegations regarding the "extreme and outrageous conduct" of ComEd are significantly less compelling than those in the *Welsh* case. In *Welsh*, some of the plaintiffs were assigned to manually cleaning manholes " 'infested with bacteria, human waste, and other disgusting matter' and denied permission to use equipment specifically designed for such purposes." *Welsh*, 306 Ill. App. 3d at 150. While the plaintiff in the instant case was assigned to work in a facility that was not operating, there is no allegation that he was compelled to engage in any activity more demeaning than filling out crossword puzzles in an office. It is incongruous to hold that plaintiff has sufficiently pled that ComEd's conduct was extreme and outrageous and the plaintiffs in *Welsh* did not.

The majority's holding that plaintiff's complaint for intentional infliction of emotional distress properly stated a cause of action based on the facts alleged here will certainly have a far-reaching effect on other cases.

I understand, as does the majority, that it is easy for an employee to allege in a complaint that his employer "knew he didn't do it" but

investigated the employee anyway. It is, of course, much harder to prove such allegations sufficiently to avoid summary judgment. I disagree with the majority that the facts alleged in the complaint before us are sufficient to avoid dismissal. Therefore, I respectfully dissent.