In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2258

CATHEY QUANTOCK,

*Plaintiff-Appellant*,

*v.*

SHARED MARKETING SERVICES,
INC., and RICK LATTANZIO,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6571—**James F. Holderman**, *Judge*.

ARGUED OCTOBER 1, 2002—DECIDED DECEMBER 12, 2002

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges*.

PER CURIAM. Cathey Quantock claims that she was subjected to unlawful sexual harassment when her boss asked her for sex, she reported it to a supervisor, and her employer did nothing about it. She sued her employer, Shared Marketing Services, Inc., for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and her boss, Rick Lattanzio, for intentional infliction of emotional distress. The parties filed cross-motions for summary judgment. The district court granted defendants' motion for summary judgment on both counts, and denied Quantock's motion for partial summary judgment as moot. We reverse the district court's judgment

regarding the sexual-harassment count against Shared Marketing, but affirm its judgment regarding Quantock's claim of intentional infliction of emotional distress against Lattanzio.

1. *Facts*

Quantock worked as an account supervisor for Shared Marketing. On the morning of January 24, 2001, she met with Lattanzio, the president of Shared Marketing, to discuss a meeting with a client occurring later that morning. As Quantock set forth in her deposition, the topic of their conversation during the meeting changed quickly from client issues to Lattanzio's desire to have sex with her. Quantock testified that Lattanzio propositioned her for sex three times during the meeting. First, he asked for oral sex. As soon as she refused, she testified, he asked her to participate in a "threesome." After another refusal, she claims he suggested that he call her on the telephone so that they could have "phone sex." She says she refused that request as well. Quantock describes other instances of sexual harassment, including prior occasions when Lattanzio grabbed her breasts and forcibly kissed her, but says that these other alleged incidents occurred three or four years earlier.

One week after Lattanzio's alleged propositions, Shared Marketing transferred Quantock to another position, that of account executive. In her new position, Quantock received the same salary and benefits, but had different job responsibilities. To meet the changing needs of Shared Marketing's clients, Quantock's new position required her to focus specifically on three of the company's accounts (rather than overseeing general company operations, as entailed in her first position). After the transfer, Quantock claims that she reported the January 24 sexual harassment incident with Lattanzio to one of her supervisors,

Tim Rounds, as required under Shared Marketing's sexual harassment policy. Quantock stayed at Shared Marketing for another month, but then resigned because the harassment and subsequent change in position left her shocked, devastated, and humiliated. She states that she obtained a prescription from her doctor for Xanax, to help reduce the anxiety caused by the harassment, and also sought counseling from a psychologist, who described Quantock as being in "shock and then dismay and then hurt and disappointment."

The defendants tell a different story. Defendants deny that Lattanzio ever propositioned or harassed Quantock. Defendants also dispute the allegation that Quantock suffered anxiety on account of the incident, claiming that she had been seeing a therapist since 1994, and taking Xanax since 1996, well before the alleged harassment.

Quantock filed a charge of employment discrimination with the EEOC based upon Lattanzio's alleged sexual harassment and Shared Marketing's failure to take any remedial action and received a right-to-sue letter. Quantock thereafter filed suit in the district court. The district court granted summary judgment to the defendants on both the sexual-harassment count against Shared Marketing and the intentional-infliction-of-emotional-distress count against Lattanzio. The district court held that, even accepting Quantock's account of events as true, Lattanzio's alleged sexual propositions to Quantock did not rise to the level of actionable harassment because they occurred on only one occasion, lasted at most minutes, and were not accompanied by a threat of physical contact. The court also held that the alleged conduct was not so outrageous as to "go beyond all bounds of human decency," and therefore did not constitute intentional infliction of emotional distress. Quantock filed a timely appeal.

2.  *Analysis*

In order to survive summary judgment, Quantock needed to come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 752 (7th Cir. 2002). Quantock argues on appeal that she did introduce evidence creating genuine issues of fact for trial on both her sexual-harassment and intentional-infliction-of-emotional-distress claims. We will consider each of her claims in turn, beginning with her claim of sexual harassment.

2(a).  *Sexual harassment*

To prevail on her claim of sexual harassment based on hostile work environment,[1] Quantock must establish that: (1) she was subjected to unwelcome sexual advances, re-

---

[1] Before the district court, Quantock made her Title VII claim on the additional basis of a *quid pro quo* harassment theory. The district court denied her claim on that basis, however, based on its finding that she had not suffered a tangible adverse employment action. The district court noted that, although Quantock had been "transferred" to a position with a new title, her wages, employment benefits, and work space had remained the same. This Court has indeed held that an adverse employment action is something more than a mere "alteration in job responsibilities." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). For a job transfer to be a "tangible adverse action," it must be accompanied by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. In this case, there is uncontroverted evidence that Quantock's transfer was a temporary *change* in her job responsibilities, rather than a "significant diminishment" of material responsibilities. Thus, this Court will not disturb the district court's finding that Quantock did not suffer a material adverse employment action.

quests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002); *Haugerud v. Amery School Dist.*, 259 F.3d 678, 696-97 (7th Cir. 2001). In order to establish the "hostile work environment" element, the plaintiff must submit evidence showing that she was subjected to conduct "'so severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment.'" *Hilt-Dyson*, 282 F.3d at 462-63 (citation omitted). Moreover, to qualify as "hostile," the work environment must be "both objectively and subjectively offensive. . . ." *Hilt-Dyson*, 282 F.3d at 463.

The district court in this case found that Quantock had failed to establish a *prima facie* claim, insofar as the alleged harassment was not sufficiently "severe or pervasive." *Quantock v. Shared Marketing Servs., Inc., et al.*, No. 01 C 6571 (N.D. Ill. May 9, 2002). The district court noted that the incident of harassment was an isolated occurrence, short in duration, and that it involved no physical touching. Based on those observations, the district court concluded that there was no genuine issue of fact for trial on Quantock's discrimination claim.

In determining whether conduct is "severe or pervasive" enough to alter the conditions of employment, we look at "the totality of the circumstances, including . . . the 'frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Murray v. Chicago Transit Authority*, 252 F.3d 880, 889 (7th Cir. 2001). Though infrequent, Lattanzio's alleged outright solicitation of numerous sex acts from Quantock is considerably more "severe" than the type of "occasional vulgar

banter, tinged with sexual innuendo" that has previously been deemed to fall short of the hostile workplace standard. *See*, *e.g.*, *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996) (finding that three "sexually suggestive" comments by a co-worker did not "unreasonably interfere [ ]" with the plaintiff's working environment). Given that Lattanzio made his repeated requests for sex *directly* to Quantock, *see Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (sexual innuendo not "severe" because made out of the presence of the claimant), and in light of Lattanzio's significant position of authority at the company and the close working quarters within which he and Quantock worked, a reasonable jury could find the sexual propositions sufficiently "severe," as an objective matter, to alter the terms of Quantock's employment.[2]

Moreover, there remains a triable issue of fact as to whether Quantock herself viewed that conduct as "severe or pervasive" (the "subjective" component of the hostile environment analysis). Quantock has presented evidence that she reported the conduct to a supervisor, sought treatment from a psychologist, and was "humiliated" on account

---

[2] The district court focused not on the severity of Lattanzio's alleged solicitations, but instead on their lack of pervasiveness. The court concluded that although Quantock submitted evidence of three solicitations of sex, the solicitations occurred during a single incident and over the course of only a few minutes, and thus no reasonable person could conclude that the conduct was pervasive enough to have created an abusive environment. But abusive conduct "need not be both severe *and* pervasive to be actionable; one or the other will do." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000) (emphasis added). Given the severe nature of Lattanzio's alleged conduct, we are of the opinion that the district court erred in concluding that Quantock's sexual-harassment claim fails because the conduct was not also pervasive.

of Lattanzio's actions. A reasonable jury could therefore conclude that she did, in fact, view Lattanzio's alleged conduct as "severe," and that she did, as a result, experience a "hostile" workplace.

Quantock also submitted evidence establishing the remaining elements of her sexual-harassment claim—that the conduct was directed at her because of her sex, and that there was a basis for employer liability. *See Hilt-Dyson*, 282 F.3d at 462-63. Given the nature of the harassing conduct—a male supervisor's direct requests for sex from his female subordinate—a reasonable jury could conclude that the harassment was directed at Quantock "because of her sex." *See Haugerud v. Amery School Dist.*, 259 F.3d 678, 695 (7th Cir. 2001) ("[I]t would be reasonable to conclude that a male [employee] would not have been treated the same way."). Moreover, Quantock's evidence that Lattanzio was her supervisor was sufficient to establish that Shared Marketing may be held liable for Lattanzio's conduct. *See Hall*, 276 F.3d at 355 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." (internal citation omitted)).

Because there remain issues of fact as to each element of Quantock's Title VII claim, the district court should not have granted summary judgment to Shared Marketing on Quantock's sexual-harassment claim based on hostile work environment.

2(b). *Intentional infliction of emotional distress*

Next, we turn to Quantock's intentional-infliction-of-emotional-distress claim, on which the district court granted summary judgment in Lattanzio's favor. The district court denied Quantock's tort claim on the merits, finding that Lattanzio's alleged acts were not "extreme and outra-

geous". *See Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000). Even if the court erred in doing so, however, summary judgment on this claim should nonetheless be affirmed.

The Illinois Human Rights Act preempts tort claims that are "inextricably linked" to allegations of sexual harassment and requires that such claims be brought only before the Illinois Human Rights Commission. Illinois Human Rights Act, 775 ILCS 5/2-102(D); 775 ILCS 5/8-111(C); *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22-23 (Ill. 1977). Preemption extends to claims of intentional infliction of emotional distress that depend on allegations of sexual harassment. *See Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 493 (7th Cir. 1997) (per curiam), *aff'd in non-relevant part sub nom. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000) (IHRA preempted intentional-infliction-of-emotional-distress claim that was based upon comments referring to employee's disability).

Quantock's claim of intentional infliction of emotional distress is supported by factual allegations identical to those set forth in her Title VII sexual-harassment claim. Summary judgment should therefore be affirmed on the basis of preemption. *Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002).

### 3.  *Conclusion*

For the preceding reasons, we AFFIRM that part of the district court's order granting summary judgment on Quantock's intentional-infliction-of-emotional-distress claim and REVERSE the district court's grant of summary judgment on her sexual-harassment claim.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-12-02