**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2008[*]
Decided March 31, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-3698

| | |
|---|---|
| CHERYL D. ALLEN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:06-cv-1467-LJM-WTL |
| AMERICAN SIGNATURE, INC., d.b.a. | |
| VALUE CITY FURNITURE, | Larry J. McKinney, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Cheryl Allen, a former sales associate for Value City Furniture, filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, claiming that she was subjected to a sexually hostile work environment and retaliated against for complaining

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

about it. The district court granted summary judgment for Value City. Allen appeals, and we affirm.

We construe the facts in the light most favorable to Allen. *See Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006). Value City, a furniture retailer, hired Allen as a sales associate in November 2003. She was paid both an hourly wage and sales commissions. Her commissions, like those of all the sales associates at Value City, were paid upon the successful delivery of furniture to the customer.

In November 2004 Allen complained to Value City's regional human resources manager, David Dowty, that the warehouse manager, Jim Stonebreaker, asked her several times to be his date at a "candlelight dinner" after assisting her with her furniture orders. She said that she declined, and that Stonebreaker responded by purposefully damaging furniture she had sold in order to prevent her from earning certain commissions. Allen said that this behavior stopped in July 2004. She added that she had recently learned that Stonebreaker had, around the same time, orchestrated a bet with some of her coworkers whether she would lose weight if one of their supervisors flirted with her. And she also recounted conversations in which she and other sales associates discussed sexually explicit topics in vivid detail. When she was later deposed by Value City, Allen reiterated these same allegations and confirmed that Stonebreaker's harassing behavior stopped in July or, at the latest, August. Allen, though, admitted that she has no evidence to support her allegation that Stonebreaker's actions affected her commission-based income.

Dowty launched an investigation, which lasted through the end of 2004. Nothing that he uncovered substantiated Allen's allegations about Stonebreaker, although he was required to attend sexual harassment training. Instead, Dowty fired a sales associate, DJ Hill, for inappropriate behavior that had not involved Allen. Dowty also received numerous complaints that Allen herself had engaged in disruptive behavior at work. She was given a "final" warning for "disorderly conduct" and spreading "false rumors." The warning was "final" because in September 2004 she had likewise been admonished for making offensive and false remarks about her co-workers.

In March 2005 Allen complained to human resources that she was being retaliated against for having complained about Stonebreaker's harassment. For example, she opined that Value City's decision to discipline her under its "up" system, which governs how sales associates are assigned to incoming customers, was retaliatory. She also said that her fellow sales associates were criticizing her because they were upset that Hill had been fired. She then listed about 30 acts, all related to her belief that the company was having her tracked and followed. For example, she wrote that her coworkers were walking by her house, could

somehow see inside her bedroom, followed her car in black Suburbans, had arranged a car accident she had recently been involved in, and had arranged for the FBI to follow her.

Dowty found Allen's allegations "outlandish" and thought them maybe even intentionally fabricated. He interviewed several of her co-workers, who denied spying on Allen outside of work. They also reported that she herself had engaged in disturbing behavior, such as "stalking, cat-like" one of their managers at a late-night promotional event and quizzing them on what they knew about her personal life. They reported that they felt uncomfortable, and sometimes even unsafe, around her. In April 2005 Dowty fired Allen because she had repeatedly spread false rumors and become a "disruptive presence" in the workplace.

Allen filed two charges of discrimination with the EEOC on December 13, 2005, and this lawsuit in October 2006. Her claims are difficult to pin down, but she appears to claim that (1) she was sexually harassed by Stonebreaker in the summer of 2004, resulting in a hostile work environment, and (2) she was mistreated and subsequently fired in retaliation for complaining about the sexual harassment. Both Allen and Value City moved for summary judgment. The district court denied Allen's motion and granted Value City's.

On appeal Allen asserts that the district court erred in granting summary judgment to Value City on both her hostile work environment and retaliation claims. We review a grant of summary judgment de novo. *See Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007).

We first address Allen's claim of a hostile work environment. In our view, this claim is time-barred, and thus summary judgment for Value City was appropriate. Allen was required to submit her claim to the EEOC within 300 days of the offending conduct, so here any claims based on discrete acts occurring before February 16, 2005, are untimely. *See Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). Although the district court found Value City's untimeliness argument "persuasive[]," it nevertheless liberally construed her claim to be that she endured a hostile work environment from the summer of 2004 through March 2005. *See Nat'l R.R. Passenger, Corp., v. Morgan*, 536 U.S. 101, 122 (2002); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1027 (7th Cir. 2003). But even affording Allen's complaint a liberal construction as we must, *see Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006), we cannot agree that any sexual harassment occurred within the period of limitations. Allen admitted that Stonebreaker's inappropriate behavior stopped in August 2004, and although she insists that she was disciplined for violating the "up" system, criticized for Hill's firing, and tracked outside of work following the investigation, none of these actions were taken on account of Allen's sex, that is, because she is a woman, and they

are more appropriately considered as part of her retaliation claim. *See Orncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-81 (1998).

In any event, Allen's claim fails on its merits as well. The alleged sexual harassment was neither severe nor pervasive, such that she could meet her burden to demonstrate that her workplace had became both subjectively and objectively hostile. *See Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Stonebreaker's dinner invitations did not make Allen's workplace objectively hostile. *See, e.g., Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645-46 (7th Cir. 2005) (supervisor's propositions to female employee to join him for "a weekend of drinking and other things" were "relatively isolated instances of non-severe misconduct" insufficient to demonstrate hostile work environment). We have also explained that behavior of which a plaintiff is unaware, like the bet about Allen's weight, cannot by themselves render the workplace hostile. *See, e.g., Kriescher v. Fox Hills Golf Resort and Conference Ctr.*, 384 F.3d 912, 915 (7th Cir. 2004) (plaintiff failed to demonstrate that her workplace was hostile when she was not personally exposed to incidents she recounted). And if Allen intends to style her claim as that of "quid pro quo" harassment, it is doomed because she has presented no evidence whatsoever demonstrating that she lost commissions as a result of her rebuke of Stonebreaker. *See Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 903 n.1 (7th Cir. 2002) (affirming summary judgment on plaintiff's "quid pro quo" sexual harassment claim where there was no evidence that plaintiff suffered an adverse employment action).

We turn next to Allen's retaliation claim. To the extent that it rests on Value City's alleged mistreatment of Allen in the months following her November 2004 internal complaint, summary judgment for Value City was proper because that so-called mistreatment did not amount to a "materially adverse" action that can support a retaliation claim. *See Burlington N. & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2415 (2006); *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 779 -80 (7th Cir. 2007). It is true that acts that would dissuade a reasonable employee from making a claim of discrimination can constitute actionable retaliation. *See Burlington Northern,* 126 S. Ct. at 2415; *Lewis v. City of Chicago,* 496 F.3d 645, 655 (7th Cir. 2007). But Allen's written reprimand for violating the "up" system and the criticism she purportedly endured from her fellow sales associates for Hill's firing do not rise to the "materially adverse" level. *See Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 902 (7th Cir. 2003) (explaining that written reprimand unaccompanied by "tangible job consequences" is not materially adverse employment action even in context of retaliation claim). And her allegations that she was being tracked and followed while outside of work are wholly unsupported.

To the extent that her retaliation claim rests upon her termination, summary judgment was also properly granted in Value City's favor. Allen is proceeding under the

indirect burden-shifting method. *See Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005). Her claim fails under that method because even assuming that she met her initial burden to make out her prima facie case, Allen has presented no evidence that undermines the truthfulness of Value City's proffered reason for firing her, namely that she had become a disruptive presence in the workplace. Because Value City articulated this legitimate non-discriminatory reason for firing Allen, she must show a genuine issue of fact that the reason is a pretext for discrimination. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006); *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 692 (7th Cir. 2007); *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417-18 (7th Cir. 2006). In that vein, Allen asserts that Dowty is a liar. But a bald assertion like that is insufficient to defeat summary judgment. *See Smith v. Potter,* 445 F.3d 1000, 1009 (7th Cir. 2006). Plus, it is belied both by the fact that Allen was reprimanded for similar disruptive behavior in September 2004 before she ever engaged in protected conduct and the fact that Dowty relied—as he was entitled to—on the statements of Allen's co-workers that they felt uncomfortable and even unsafe around her. *See Brewer v. Bd. of Tr. of the Univ. of Ill.,* 479 F.3d 908, 918 (7th Cir. 2007).

The judgment is AFFIRMED.